Hunsicker *v.* Waidelich et al., Exrs., Appellants.

Argued December 2, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*J. M. Rapoport,* of *Groman & Rapoport,* for appellants.—The trial judge erred in overruling appellants' point for binding instructions and motion for judgment non obstante veredicto: Rynd v. Bakewell & Reed, 87 Pa. 460; Dyer v. Wallace, 264 Pa. 169.

The pleadings are clearly based on an express contract. That being so, the law does not permit recovery on a quantum meruit, where there is an expressed bargain between the parties: Hertzog v. Hertzog, 29 Pa. 465; Fitzpatrick v. Trust Co., 194 Pa. 544; Kreusler v. School Dist., 256 Pa. 281; Witten v. Stout, 284 Pa. 410; Sykesville Boro., 91 Pa. Superior Ct. 335.

Mere loose declarations made to third parties in his lifetime by a decedent do not constitute a contract:

Donohoe's Est., 271 Pa. 554; Graham v. Graham, 34 Pa. 475; Miller's Est., 136 Pa. 239; Gilbraith's Est., 270 Pa. 288; Breniman v. Breniman, 281 Pa. 304; Grollman's Est., 273 Pa. 559; Hirst's Est., 274 Pa. 286; Gross's Est., 284 Pa. 73.

A lien may be filed for extras but before there can be a recovery therefor, they must be pleaded: Eisenberg v. Wolf, 86 Pa. Superior Ct. 169; Knelly v. Horwath, 208 Pa. 487; Rush v. Able, 90 Pa. 153, 160; Dyer v. Wallace, 264 Pa. 169, 173; Murphy v. Bank, 184 Pa. 208.

The trial judge erred in permitting plaintiff to amend the mechanic's lien nunc pro tunc as to the oral agreement between decedent and plaintiff regarding compensation to be paid plaintiff: Willson v. Canevin, 226 Pa. 362; Dearie v. Martin, 78 Pa. 55; Sumption v. Rogers, 53 Pa. Superior Ct. 109; Ward v. Letzkus, 152 Pa. 318; Law v. Groves, 47 Pa. Superior Ct. 411.

The trial judge erred in going into the jury room while they were deliberating and communicating with the jury in the absence of counsel and the parties: Sommer v. Huber & Holma, 183 Pa. 162.

*L. H. Rupp,* of *Butz, Rupp & Welty,* for appellee.— When a contract is between the owner and contractor there is no necessity, under the Mechanic's Lien Act of April 17, 1905, to set forth the contract. It is sufficient under the act to set forth the amount claimed to be due, the amount of materials furnished and that the materials were furnished over a period of time, giving the dates of the first and last deliveries: Kase v. Segal, 17 Berks Co. L. J. 133; Hitchcock v. Berman, 17 Delaware Co. R. 53; Kelly v. Collins, 19 Delaware Co. R. 274; Mulhern v. Howland, 19 Delaware Co. R. 430; McDonald v. Eiler, 81 Pa. Superior Ct. 172.

Where a claimant works under contract with the owner it is not necessary to particularize items making up the contract price: Citizens Bank v. Lesko, 277 Pa. 174; Rose v. Scott, 75 Pa. Superior Ct. 196; Willson

v. Canevin, 226 Pa. 362; Slezak v. Ziberna, 3 Pa. D. & C. 831; Bernheisel v. Smothers, 5 Pa. Superior Ct. 113; Calhoun v. Mahon, 14 Pa. 56.

The law as it obtains in Pennsylvania permits the lien claimant to amend his lien at any time during the existence of the lien or during the course of the trial: Thirsk v. Evans, 211 Pa. 239; Vogel Co. v. Grape Products Co., 57 Pa. Superior Ct. 501.

The mere fact that, at the jury's request, the court gave them further instructions in the absence of a party, will not entitle him to a new trial, unless something occurred to his prejudice: Cunningham v. Patton, 6 Pa. 355; Allegro v. Ins. Co., 268 Pa. 333.

OPINION BY MR. CHIEF JUSTICE FRAZER, January 5, 1931:

Plaintiff, a contractor, agreed to erect a building for Jacob Waidelich in the City of Allentown. The contract was oral and required plaintiff to furnish materials and labor on a cost-plus basis, at current market prices plus commission as compensation for his services. Waidelich died shortly after completion of the building and plaintiff then filed a lien for the balance claimed to be due him. Waidelich's executors were made parties to the record and filed an affidavit of defense denying, for various reasons specified, decedent was indebted to plaintiff in any amount and averring the claim filed was for a grossly excessive amount. The trial resulted in a verdict for plaintiff for $75,242.67. Defendants moved for a new trial and for judgment non obstante veredicto. The court refused the latter motion but ordered a new trial unless plaintiff filed a remittitur to the extent of $3,000. This was done and judgment entered on the verdict in favor of plaintiff for the balance, with interest, a total of $73,831.99.

In support of the motion for judgment non obstante veredicto, appellants argue there was a variance between the claim as filed and the proofs offered on the

trial of the case to show the contract between the parties. The original claim as filed averred the contractor was to be paid for his services 6% of the cost of the work. At the first trial of the case, this averment was amended to the effect that the oral agreement between claimant and deceased was that claimant should receive "a reasonable compensation" for the services rendered. The owner having died, plaintiff was incompetent to testify to the terms of the oral contract with him, and as there were no witnesses present at the time it was made, plaintiff was obliged to resort to proof of declarations made by decedent to third persons concerning the terms of his contract with plaintiff. One witness testified decedent stated to him that it was "a commission job," but the amount of the commission was not mentioned. Another testified to similar declarations, and, further, that in the course of the conversation with decedent he told the latter, "those commission jobs ran about 10%," to which decedent replied that "he would do as good as he did with the Reading job," but no particulars were given as to what was done on that job, and, when asked as to the reply made to the suggestion that commissions usually ran about 10%, the witness stated decedent made no reply. A third witness testified that, in a conversation with decedent at the time a bill or statement for work on the building was presented, decedent stated he "did not know it was so high," and, on being asked by the witness whether the bill included any commission, decedent replied in the negative. He was then asked what arrangement he had in that regard, and replied: "We have arrived on a verbal agreement on that. You know, Louie and I are good friends, and that will be handled." And decedent further said: "We have not arrived at that, but the commission will be fair."

While the above testimony does not establish a fixed rate of commission, it shows an oral agreement that compensation was to be paid at a fair rate on a per-

centage basis. Plaintiff followed this testimony by proof that a fair commission in contracts for work of the character performed by plaintiff ran from 10% to 15% of the total cost. The trial judge left the question to the jury, but instructed them that they could not allow a commission in excess of 6%, which was the amount stated in the claim as originally filed. By adopting this course, the amount receivable under the claim as originally filed was not increased and the proofs were directed to the amendment claiming a reasonable compensation for the services rendered. There was no variance between the pleading and proofs, nor was plaintiff permitted to recover an increased amount after the statutory time for filing the claim had expired.

Appellant complains, however, that the trial judge erred in permitting plaintiff to amend the lien nunc pro tunc in so far as it set forth the rate of compensation alleged to have been agreed upon in the oral contract between the parties. It appears a petition for amendment was presented at the first trial of the case, and orally allowed by the court; the amendment, however, was not in fact signed by the trial judge. At the second trial, upon objection to evidence offered being made on the ground that the commission claimed was 6% and not a reasonable compensation, the court stated the amendment had been allowed at the previous trial and that, as the court had evidently failed to sign the petition when presented by counsel, though it had been marked filed in the prothonotary's office, he would now sign the petition as of the date on which the amendment was allowed. This procedure was proper and within the power of the court. A formal plea of surprise was entered and overruled by the court, with the statement that defendant had notice at the time the amendment was presented and allowed at the former trial and for the further reason that the Mechanic's Lien Act of June 4, 1901, P. L. 431, 511, as amended April 17, 1905, P. L. 172, did not require claimant to set forth the contract. Section 51

of the Act of 1901 authorizes amendments, as a matter of right, saving intervening rights, except that amendments substituting a different property or a different party shall not be made after time for filing a lien has expired. Subject to these restrictions, there is no limitation as to the time for making amendments; they can be made during the existence of the lien and it is proper to permit amendment at the trial of the case, if circumstances require it: Thirsk v. Evans, 211 Pa. 239. The amendment here offered was a proper one within the provisions of the act, and, in view of the fact that it was first offered and orally allowed at a former trial of the case, the court below properly concluded that defendant was not in a position to plead surprise. Furthermore, if the court had erroneously allowed the amendment, it was rendered harmless by the charge which limited compensation to an amount not exceeding 6%, which was the amount in the original claim as filed.

A number of assignments of error question the rulings of the trial judge on evidence offered to prove the amount due plaintiff for extra work, bills paid materialmen, labor and materials furnished, competency of books and time cards, and the extent to which books, copies and memoranda might be used by witnesses to refresh their memory. It is unnecessary to discuss these questions in detail because of the fact that, during the course of the trial, the parties entered into a written stipulation admitting "that all items of charges on the books of plaintiff of materials and freight were furnished and delivered by himself or others in the erection or construction of the building," and that the parties had "agreed upon a statement of debits reflecting the items that have already been proved." Pursuant to this stipulation, the trial judge charged the jury that their burdens had been lightened by the action of counsel in having "stipulated that certain figures should represent the debit side of the plaintiff's books of original entries, and also the credit items." Under these circumstances, if error en-

tered into the admission of evidence relating to proof of items of the claim, it was rendered harmless by the agreement as to the amount of the claim.

A more serious question is presented in the 15th assignment of error which complains of the action of the trial judge in visiting the jury room while the jury were deliberating and communicating with them in the absence of counsel and the parties. The trial judge gives the following statement of what took place: "This was the last case on trial; the jury retired about 2:45 P. M., November 6, 1929, to deliberate on their verdict. At about 4:30, on the same date, while they were still deliberating, I went into the jury room alone, and, in the absence of counsel and the parties, I said to them, 'Ladies and gentlemen, how are you getting along?' Then one of the jurors answered, 'All right.' I said 'All right, I will wait.' The jury returned its verdict shortly before 5 P. M. on the same date, in the same amount as shown by a calculation submitted to them by counsel for the plaintiff." In the opinion of the court below, written by the trial judge, the following explanation of the reason for his actions was set forth: "The judge, having in mind the magnitude of the case and the intricacies of the trial, was desirious to avoid a sealed verdict if possible, and willing to wait the jury's return with its verdict, or to give them further instructions if desired, and, if such instructions were so requested, to further instruct them with respective counsel present. He was concerned about the verdict being correct as to form, realizing that, once separated, any mistake made by the jury as to its formal rendition of the verdict could possibly not be corrected. The judge was also solicitous about the welfare of the jurors. We can see no harm done to the defendants by his action and query. He only did, that which the tipstaff, who was in charge of the jury, and who was an appointee of the court, might have done. If the trial judge, who is writing this opinion for the court in banc, would have the least quaver of con-

science that his action had harmed the defendants in any way, we would, without hesitance, and as a matter of justice, grant a new trial."

We accept the statement of the trial judge that he meant no harm or interference with the province of the jury, and, as no instructions were given nor the questions involved discussed in any manner, we have concluded that, in view of all the circumstances, the nature of the defense, and the evidence produced, the error of the trial judge was not one which calls for reversal. We cannot, however, express too forcibly our disapproval of his action in invading the secrecy of the jury room. Instructions to the jury must be given in open court in the presence of the parties or their counsel. There may be no private communication of any kind or character between the judge and the jury, and if additional instructions are needed they must be given in open court. The trial judge should not, under any circumstances, enter the jury room, however innocent and proper the purpose may be: Sommer v. Huber, 183 Pa. 162, 164-5. There is no way of determining the influence which such act might have on the minds of the jury, and the only safe course is to avoid all questions by strictly adhering to the long established practice which requires all deliberations by the jury to be conducted in the utmost privacy.

The remaining assignments call for no particular discussion. The judgment is affirmed.