## Mills Unemployment Compensation Case.

### Department of Labor and Industry, Appellant, *v.* Unemployment Compensation Board of Review.

Argued November 10, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Morley W. Baker,* Special Deputy Attorney General, with him *T. McKeen Chidsey,* Attorney General, for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Richard H. Wagner,* Assistant Special Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for appellee.

PER CURIAM, April 12, 1949:

The facts in this unemployment compensation proceeding were stipulated by the parties under our Rule 56, and we have drawn our abstract from their agreement.

The claimant, Anne G. Mills, a married woman, was employed by the Phillips-Jones Corporation in Kane, where she resided with her husband. He secured permanent employment in Oil City, 60 miles from Kane.

He leased his home in Kane to a tenant, moved to Oil City, and made it his permanent residence. Upon his request claimant left her work in Kane in order to live with him in Oil City. She immediately registered for work with the State employment office in Oil City, and "was ready, willing and able to accept work," but, although "job opportunities existed in Oil City," none was available during the five weeks for which she claimed benefits.

The Unemployment Compensation Board of Review, relying upon *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898, held claimant not disqualified under the Unemployment Compensation Law, §402(b), 43 PS §802, which provides: "An employe shall be ineligible for compensation for any week . . . (b) In which his unemployment is due to voluntarily leaving work without good cause," and awarded compensation.[1]

The Department of Labor and Industry appealed, and bases its contention upon a statement in *Dawkins Unemployment Compensation Case,* 358 Pa. 224, 233, 56 A. 2d 254: "To hold that a married woman who quits her job to join her husband in a new domicile is voluntarily becoming 'unemployed' for a 'good cause' within the meaning of the Act is to open the door to so much fraud on employers that one may doubt that such a construction of the Unemployment Compensation Act conforms to the canon that 'all laws should receive a sensible construction' ".

In the instant case the claimant went to a place where there were opportunities for work which she was capable of performing, and the further statement of the Supreme Court, *not* quoted by appellant, becomes relevant: "If a woman can quit her job in order to follow

---

[1] The bureau initially determined that claimant was disqualified under §402(b), supra; upon claimant's appeal the referee reversed the bureau and awarded benefits; and upon the bureau's appeal the board affirmed the referee.

her husband into another domicile *where work for her will not be available,* and then become entitled to the benefits of this Compensation Act . . . the latter will in many instances be used as a 'short cut' to a temporary pension". (Emphasis added.)

The *Dawkins* case concerned a male employe who voluntarily quit his employment in order to go into business for himself as an independent contractor, and the Supreme Court held that he was not entitled to unemployment compensation upon the unsuccessful and involuntary termination of his business venture. It did not involve the factual situation here presented, and the statement which appellant quotes and upon which it relies was not necessary to the decision. It is believed to be dictum, and not binding authority.

The problem involves the meaning and application of "good cause" as employed in the Act. In a series of cases this Court has dealt with varied aspects of that problem. In *Teicher Unemployment Compensation Case,* 154 Pa. Superior Ct. 250, 35 A. 2d 739, it was held that a married woman who quit her job to join her soldier-husband in a community near an army camp was justified by good cause, but was ineligible to benefits because that community did not afford reasonable opportunities for work. In the *Sturdevant* case, supra, an award was affirmed where the married woman joined her husband in a locality where work was available, although she was not successful in securing work. In *Dames Unemployment Compensation Case,* 158 Pa. Superior Ct. 564, 45 A. 2d 909, a single woman who left her work in order to join her fiance and fulfill her promise of marriage was held to have voluntarily left her work without good cause.

The *Sturdevant* case offered a "tentative and groping" (p. 554) definition of good cause, at the heart of which lay: "The pressure of necessity, of legal duty, or family obligations or other overpowering circum-

stances." (p. 557). The *Teicher* and *Sturdevant* decisions were rested upon "the legal right of the husband to select the marital domicile and . . . the legal duty of the wife to reside with him": *Sturdevant* case, p. 557. In the *Dames* case, the single woman was denied benefits because her promise to marry imposed a moral duty, not a legal obligation. The doctrine of that line of cases is that legal compulsion constitutes good cause.

In *Barclay White Co. v. Unemployment Compensation Board of Review*, 356 Pa. 43, 48, 50 A. 2d 336, the Supreme Court approved at least a part of our definition. It said: "It is impossible to give a general definition of 'good cause'. The meaning of those words must be determined in each case from the facts of that case. We are convinced that 'good cause' was intended to cover reasons which are *personal to the employe* and extraneous to the employment if they are, as said by the learned Superior Court in Sturdevant Unemployment Comp. Case, 158 Pa. Superior Ct. 548 [557], 45 A. 2d 898, 'real not imaginary, substantial not trifling, reasonable not whimsical, circumstances [which] compel the decision to leave employment' or to refuse suitable work. But in addition, 'good cause' must be so interpreted that *the fundamental purpose of the legislation shall not be destroyed.*" (Emphasis added.) The reference in the last italicized clause is to §3 of the Act, 43 PS §752, which declares that the unemployment funds shall be "used for the benefit of persons unemployed through no fault of their own."

The *Dawkins* case affirmed (p. 237) the definition in the *Barclay* case, and added: "Even in matters connected with his employment there must be some limit to the legally approved list of 'good causes' for quitting employment. The quitting must be for such a cause as would reasonably motivate in a similar situation the average able bodied and qualified worker to give up his

or her employment with its certain wage rewards in order to enter the ranks of the 'compensated unemployed'."

Applying the several declarations of the Supreme Court as the approved standard test, it appears clear that the claimant, under the facts of this case, acted upon reasons which were personal to her and extraneous to her employment; they were real not imaginary, substantial not trifling, reasonable not whimsical, circumstances which compelled the decision to leave her employment; and they were of such nature as would reasonably motivate the average able-bodied and qualified married woman in a similar situation to give up her employment. No elucidation is needed to demonstrate that a woman who leaves her work to join her husband in another city acts upon a reasonable motive, a motive upon which the average married woman would act. Since she registered for work, and the parties have agreed that she was "ready, willing and able to accept work" there is, *in this case,* no basis for a conclusion that she gave up "her employment with its certain wage rewards in order to enter the ranks of the 'compensated unemployed'." So, whether objective legal compulsion or subjective reasonable motivation is the applicable test, the result in this factual situation is the same.

Nor can it be said that she is unemployed through her own fault. "Fault" is more than volition, more than a voluntary act. Whether its lexical [2] or legal [3] meaning be consulted, "fault" always connotes an act to which blame, censure, impropriety, shortcoming, or culpability

---

[2] "Fault: A failing; a defect in quality or constitution; as an imperfection in character or disposition; specif., a blameworthy moral weakness less serious than a vice ... A failure to do what is right. Specif. A moral transgression, a sin. ... Wrongdoing of a venial nature; a misdemeanor. ... Mistake, error. ... Responsibility for wrongdoing or failure; culpable cause." Webster.

[3] 35 C. J. S., p. 755, where many judicial definitions of "fault" are collected.

attaches. Unless the word be given that meaning in the reading of the Act there is no area in which "good cause" can operate. If fault means any voluntary act of the employe by which employment is severed, the cause for the separation, however good, will not avail. Even if "fault", as it stood in the Act as originally enacted, could have meant any voluntary act, the amendment which introduced good cause into the law must be taken to have modified and limited its original meaning. We conclude that although claimant's unemployment resulted from her voluntary act, she was not unemployed through her own fault, a blameworthy act, but was justified by good cause.

It must be understood, too, that good cause never exists without good faith. "The vitalizing element of good cause is good faith. . . . Good faith, in this context, embraces not only the merely negative virtue of freedom from fraud but also positive conduct which is consistent with a genuine desire to work and to be self-supporting. Good faith never resides in a claimant who is seeking to take advantage of his benefit rights in order to have a compensated vacation from work": *Brilhart Unemployment Compensation Case,* 159 Pa. Superior Ct. 567, 569, 49 A. 2d 260. A claimant always carries the burden of showing the good cause upon which the claim is based, and this necessarily includes good faith. Hence, when the voluntary act of severance is a "fault" within the proper sense of that word as it is employed in the Act the employe's good faith in committing the culpable act is immaterial, and the claim will be rejected.

A protracted re-examination of the whole problem, considered in the light shed by the *Dawkins* case, and following its test of "good cause", has led to the conclusion that *this* claimant, under the facts of *this case,* is entitled to compensation, and the decision of the board is affirmed.

428

The question involved is "so important as to make it expedient that the case be decided by the Supreme Court", and accordingly, upon motion of appellant and appellee, this appeal is certified to the Supreme Court in conformity with the Act of June 24, 1895, P. L. 212, §10, 17 PS §197.