Hill *v.* Gerheim, Appellant.

Argued October 7, 1965. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*George M. Weis,* with him *Weis & Weis,* for appellant.

*Clem R. Kyle,* for appellant.

*Emanuel Goldberg,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 9, 1965:

Fred D. Hill sued Vincent Gerheim for personal injuries received in an automobile accident. Gerheim caused the Peoples Cab Company (Cab) to be joined as an additional defendant in the action. After trial, the jury returned a verdict in favor of both defendants, specifically finding Hill guilty of negligence. The lower court granted a new trial. Both Gerheim and Cab appeal.

The collision involved occurred on March 12, 1961, about 4:30 a.m. o'clock on Liberty Avenue in the City of Pittsburgh. At the pertinent point, Liberty Avenue extends in an easterly and westerly direction and includes six traffic lanes, three for traffic traveling in each direction. At the time, Hill was operating a taxi for the Yellow Cab Company. According to his trial testimony, he was in the process of pushing with his cab a disabled cab of the Peoples Cab Company for an extended distance in a straight line in an easterly direction on Liberty Avenue, when an automobile operated by Gerheim traveling in the same direction, violently crashed into the rear of his vehicle. Hill's testimony as to the street position of all of the three vehicles involved was corroborated by the trial testimony of two witnesses (one a police officer), both of whom arrived at the scene shortly after the occurrence.

Gerheim's uncorroborated version of the accident was completely different. He testified that as he traveled east on Liberty Avenue and approached the point of impact, Hill's vehicle was traveling in a westerly di-

rection; that suddenly and without warning, Hill's vehicle made a U-turn coming over onto the side of the roadway reserved for easterly traveling traffic; and, that before he could bring his automobile to a stop, it collided with the right side of Hill's vehicle. He further stated that Cab's automobile was not involved in the accident and was at all times, immediately before and after the accident, parked and motionless next to the curb on his side of the road.[1]

Hill, according to the testimony, was seriously injured in the accident. Right up to the moment of trial, he complained of frequent dizziness, headaches, nausea, inability to read, pains in the neck region and needle sensations in the right hand. Two physicians opined that in the accident he suffered a cerebral concussion with the possibility of subdural hemorrhage which caused the infirmities complained of. They further stated that several electroencephalogram tests by a neurosurgeon confirmed the existence of damage to the brain and nervous system. Hill was strongly advised against operating a motor vehicle in the future, and one medical witness stated that his condition was permanent, and the subject was "industrially unemployable".

On cross-examination of Hill, counsel for Gerheim asked, inter alia, the following questions: "Q. Do you have any tattoos? A. Of course. Q. You do? A. Yes. Q. Do you have any on your chest? A. Of course. Q. What do you have on your chest? Mr. Goldberg: Object to it as being incompetent, irrelevant and immaterial. The Court: Objection sustained. Mr. Weis: . . . . Q. Have you been married before? A. Yes. Q. Didn't

---

[1] His testimony at trial did not coincide with the allegations of his complaint against the additional defendant, wherein he charged that as Gerheim's automobile approached the scene, Cab's driver and employee, directed Hill to turn in front of Gerheim's automobile causing the collision to occur.

you walk out and desert that first wife? Mr. Goldberg: Objected to. . . . The Court: Objection sustained. . . . Mr. Weis: Isn't it true that you left your outfit in the Army right before they shipped overseas and deserted for two years?" An immediate objection to this question was sustained by the court.

In granting the new trial, the court below concluded that the interrogation pursued by counsel, as above outlined, had no probative value, was unduly prejudicial, and justice required a new trial.

Logic compels that wide latitude be permitted in examining and delving into the past life of an individual litigant who claims impairment of the nervous system, or brain damage caused by the wrongful act of another. See and compare, 2 Wigmore, Evidence, §§228-234 (3d ed. 1940), as to the latitude allowed where sanity is the issue. However, we agree with the lower court that the incidents in Hill's life purported to be elicited by the questions involved, even if true, would not, in themselves and without more, justify the inference that Hill suffered from brain and nervous system damage prior to the accident.[2] Also, the nature of the insinuations, particularly that involving alleged army desertion, were such that only prejudice against the plaintiff could result in the minds of the jury. The fact that the court sustained objections to the questions is of little moment. The harm had already been done. See, *Commonwealth v. Jenkins*, 413 Pa. 606, 198 A. 2d 497 (1964).

Appellants contend that even though the questions under discussion were improper, prejudicial and timely objected to, the error cannot now be complained of, since no motion for the withdrawal of a juror was en-

---

[2] The defendants-appellant did not offer any medical testimony in contradiction of Hill's medical witnesses or any other evidence to support their contention that the condition complained of existed prior to the accident.

tered of record nor request made to have the trial court charge the jury to disregard the objectionable insinuations, citing *Springer v. Allegheny County*, 401 Pa. 557, 165 A. 2d 383 (1960). *Springer* involved alleged improper remarks made by counsel in his opening to the jury which were not placed on the record until after the verdict was rendered. Also, unlike the present case, no objection to the remarks was made at any time during the progress of the trial. The situations are clearly distinguishable, and *Springer* does not control. While the better practice would have been to move for the withdrawal of a juror, we deem the objection sufficient to preserve the point for review, particularly where, as here, the trial court itself concluded that the plaintiff had been unfairly prejudiced. Compare, *Narciso v. Mauch Chunk Twp.*, 369 Pa. 549, 87 A. 2d 233 (1952).

Moreover, we are also here concerned with the power of the trial court to grant a new trial, where it concludes justice and fairness require such action. As has been enunciated by this Court again and again, we will not reverse the grant of a new trial unless a clear abuse of discretion is evident: *Sternberg v. Dixon*, 411 Pa. 543, 192 A. 2d 359 (1963), and *Niklas v. Zarnick*, 411 Pa. 205, 191 A. 2d 414 (1963). We find no such abuse in the order granting a new trial as to the original defendant, Gerheim.

However, as to the additional defendant, Cab, we conclude the lower court erred in granting a new trial for the reason that considering the evidence in its entirety, it is insufficient to sustain a finding that Cab was guilty of negligence that in any way was the proximate cause of the accident. Where the facts and the law show no liability on the part of a defendant and would, therefore, have required the affirmance of a point for binding instructions, an order of the court granting a new trial will be reversed on appeal: *Fritz*

*v. York Motor Express Co.,* 358 Pa. 398, 58 A. 2d 12 (1948).

Order in Appeal No. 194, granting a new trial as to Peoples Cab Company, is reversed, and judgment is entered in favor of said defendant.

Order in Appeal No. 199 is affirmed.