Kersey Manufacturing Company, Appellant, *v.*
Rozic.

184

Argued November 10, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*William C. Robinson*, with him *Henninger & Robinson*, for appellant.

*Harry K. McNamee*, with him *Marshall, Marshall, McNamee & MacFarlane*, for appellee.

OPINION BY WRIGHT, J., December 16, 1965:

In an assumpsit action instituted by Kersey Manufacturing Company against Albert Rozic, in the Court of Common Pleas of Butler County, the jury returned a verdict in favor of the defendant. From an order of the court below refusing to grant a new trial, the plaintiff appealed to this court. The appeal was quashed as premature because no judgment had been entered. See *Kersey Manufacturing Company v. Rozic*, 205 Pa. Superior Ct. 551, 211 A. 2d 76. Judgment was thereafter entered on the verdict, and this appeal followed.

It is appellant's contention that a new trial should be granted on the grounds that the trial judge erred (1) in permitting the introduction of certain writings and testimony in violation of the parol evidence rule; and (2) in permitting the court crier to transmit instructions to the jury without notice to counsel.

The action was based on a conditional sales contract in writing by which Kersey sold a mine tractor

and other equipment to Rozic. It was Rozic's contention that Kersey had promised him a credit of $3850.00 in exchange for a used locomotive. Although the written contract was silent on this point, it was Rozic's position that, simultaneously with the execution of the contract, he had requested and received a written modification. In support of this contention he offered his letter returning the signed contract, which letter contained the following statement: "As agreed, your driver returned with our locomotive and generator. We are now awaiting the credit for same in the amount of $3850.00, which would help the balance". He also offered Kersey's reply which contained the following statement: "Concerning the credit of $3,850.00 for your Rail Locomotive and Generator we will, as agreed, issue credit when the locomotive and Generator is sold".

We are in accord with the position of the lower court that the admission of these letters, together with testimony concerning the credit in question, did not violate the parol evidence rule. A written agreement may be modified by a subsequent written or oral agreement and this modification may be shown by writings or by words or by conduct or by all three. In such a situation the parol evidence rule is inapplicable: *Dora v. Dora,* 392 Pa. 433, 141 A. 2d 587. See also *Consolidated Tile & Slate Co. v. Fox,* 410 Pa. 336, 189 A. 2d 228; *Muchow v. Schaffner,* 180 Pa. Superior Ct. 413, 119 A. 2d 568. On this question we adopt the following excerpt from the opinion below:

"This rule has no application to the instant case for here the defendant executed the contract and simultaneously asked and received a modification in writing of the contract. The fact that this modification was discussed and negotiated prior to the signing of the contract is immaterial. The pursuance of the negotiations and the ratification of the agreement relative to the

used locomotive and the credit after the signing of the contract removes the amendment or modification from the prohibition of the parol evidence rule . . .

"The existence of the subsequent agreement modifying the original contract is not denied. It is the terms of the amendment that are disputed. The subsequent writings modifying the original contract are ambiguous. It is that ambiguity that creates the conflict between the parties. Defendant contends that plaintiff was to sell the locomotive and credit him for $3,850.00 on the locomotive. Plaintiff argues that only the amount realized from the sale was to be credited. Certainly plaintiff's letter of May 19, 1958 can be construed as meaning that when the locomotive is sold the credit for $3,850.00 will issue. If the plaintiff intended to credit only the amount realized from the sale, it failed to so state. It is a fact that plaintiff did sell the used locomotive . . .

"The issue in this case was for the determination of the jury. The jury resolved the issue in favor of the defendant. There was sufficient evidence to support this verdict".

Coming now to the second question, the record discloses that the jurors were sworn at 10:40 a.m. They retired to deliberate at 4:15 p.m. At about 6:00 p.m. the trial judge instructed the court crier to order dinner for the jurors. He then left the court house, advising the crier where he could be located. While at dinner, the trial judge received a telephone call from the crier who read to him the following note signed by the jury foreman: "We have taken quite a few ballots, and just cannot agree. We all feel that both parties are at fault and each should share the loss. If you have any suggestions, please advise". The trial judge instructed the crier to hand the note back to the foreman, dictating the following message to be written by the crier on the bottom of the note: "Continue your

deliberations. Review the evidence and come to a decision to the best of your judgment". Shortly thereafter, the jury returned its verdict.

The opinion of the trial judge for the court en banc reveals that he was fully aware of the rule proscribing instructions to the jury without notice to counsel.[1] He took the position, however, that his direction to the jurors that they should continue their deliberations did not constitute an additional instruction, as it did not pertain to the law or the facts of the case, and that it was in no way prejudicial to either party.

We have no intention of departing from the salutary rule announced in *Glendenning v. Sprowls*, 405 Pa. 222, 174 A. 2d 865, wherein it was held that an intrusion by the trial judge into the jury room required the grant of a new trial. The instant case, however, presents a far different factual situation. It is unnecessary to decide whether the response by the trial judge was actually an additional instruction. We prefer to rest our decision on the ground that appellant has entirely failed to show prejudice or harm: *Allegro v. Rural Valley Mut. F. Ins. Co.*, 268 Pa. 333, 112 A. 140. See also *Sebastianelli v. Prudential Ins. Co.*, 337 Pa. 466, 12 A. 2d 113; *Sapsara v. Peoples Cab Co.*, 2 Pa. D. & C. 2d 22, affirmed 381 Pa. 241, 113 A. 2d 278.[2] Here pertinent is the statement by Judge WATKINS in *Krywucki v. Trommer*, 199 Pa. Superior Ct. 145, 184 A. 2d 389, allocatur refused 199 Pa. Superior Ct. xxx, as follows:

[1] "Under our system of jury trials it is a fundamental rule that the judge does not send the jury private written instructions. If further instructions are required the jury is returned to the Court Room. Court is not recessed until the verdict is rendered and counsel are not excused from being present in court until the verdict has been rendered".

[2] This principle has even been applied in criminal cases. See *Commonwealth v. Kelly*, 292 Pa. 418, 141 A. 246; *Commonwealth v. Maroney*, 178 Pa. Superior Ct. 633, 116 A. 2d 301.

"Glendenning v. Sprowls, 405 Pa. 222, 174 A. 2d 865 (1961) held it to be misconduct of a trial judge and reversible error in visiting the jury room six times without the knowledge of counsel. However, the Supreme Court distinguished this case from Hunsicker v. Waidelich, 302 Pa. 224, 153 A. 335 (1931), where a new trial was refused, on two grounds, (1) the judge made only one visit to the jury room and it was conceded that nothing prejudicial was said by him and (2) that we have warned trial judges that such practice of invading the jury room would no longer be tolerated. The Glendenning case, then, stands for the proposition that any intrusion by a judge into the jury room during the jury's deliberations without notice to counsel is reversible error per se, as a violation of due process, but we are unable to read into the decision a change in the law as to the requirement that prejudice or harm must be shown in the case of additional instructions, without notice, to warrant a new trial, except that the practice is condemned".

We are not impressed by the suggestion that the note submitted by the jurors indicated that they were employing an incorrect standard in deciding the case. The statement that both parties were at fault does not demonstrate that the jurors were under the impression that they were trying a negligence action. The word "fault" connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches: *Mills Unemployment Compensation Case*, 164 Pa. Superior Ct. 421, 65 A. 2d 436.[3] The theories of the parties were diametrically opposed. The jurors were undoubtedly having difficulty reconciling the testimony. That the conflict was eventually resolved adversely to the appellant is not ground for reversal.

Judgment affirmed.

---

[3] Appeal quashed *Mills Unemployment Compensation Case*, 362 Pa. 342, 67 A. 2d 114.

CONCURRING AND DISSENTING OPINION BY HOFFMAN, J.:

I agree with the majority that the lower court did not err in permitting the introduction of letters and other evidence in connection with this case.

In my opinion, however, there is reason to believe that prejudice to appellant may very well have occurred, and that a new trial should be ordered.

First, it should be noted that *Glendenning v. Sprowls,* 405 Pa. 222, 226, 174 A. 2d 865, 867 (1961), did not simply warn trial judges about instructions with respect to law or facts. The court stated, rather, that, "We strongly condemn . . . *any communication* by a judge with the jury without prior notice to counsel and such practice must immediately be stopped!" (emphasis added).

Second, we are uncertain as to the exact nature of the communication with the jury, since the judge made no effort to insure that his message would be transmitted correctly and accurately. He dictated his message to the crier by phone, but never read the actual instructions before they were taken to the jury. In fact, when later asked to verify the contents of the message, he could only assert that he ". . . instructed [the crier] to convey to [the foreman] *substantially* the message that was written" (emphasis added). When the lines of communication between judge and jury are established in such a haphazard fashion, the potential for misunderstanding, misapprehension and mistake is very great.

Third, the trial judge never informed counsel of the written request and instructions, nor did he originally make them a part of the record in this case. Only after a verdict had been rendered by the jury did appellant's counsel become aware of this exchange of messages.

190

Finally, the written request submitted by the jury clearly indicated that additional competent instruction was needed. The request stated the jury's belief that ". . . both parties are at fault and each should share the loss." Yet, "fault" was never an issue in this case, nor was it ever raised in the court's charge. As the majority recognizes, "Whether its lexical or legal meaning be consulted, 'fault' always connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches." *Mills Unemployment Compensation Case,* 164 Pa. Superior Ct. 421, 426-427, 65 A. 2d 436, 439 (1949). The jury was not required to find which of the parties was to blame or which had acted in a culpable manner. The task of the jury was simply to determine the intent of the parties to a contract.

The jury had been deliberating for at least two hours when their note was first communicated to the judge. Their message demonstrated that they were confused and required additional competent instruction. Yet these added instructions, of which they were in obvious need, were withheld from them. By ignoring the long-established principle that counsel be informed of all communications between judge and jury, both parties were denied the right to request that such additional competent instruction be given. Moreover, the court, in its added instructions did not indicate to the jury, in any way, that they were employing incorrect criteria in this case. Indeed, by simply telling them that they should continue their deliberations, he may have suggested that they were considering the evidence in a proper fashion. In this regard, it is perhaps significant that shortly after the jury received this message, they returned their verdict.

Whether prejudice is created in the minds of jurors is always in the realm of speculation. This question can rarely, if ever, be resolved by us with certainty. However, when a judge improperly communicates with

the jury and, at the same time, ignores that jury's obvious confusion, there is very strong reason for finding such prejudice. Communications between judge and jury without notice to counsel have been specifically condemned because of the great danger of prejudice. When, as here, the possibility of prejudice is so readily apparent, we should not hesitate to order a new trial.

I would reverse and grant a new trial.

JACOBS, J., joins in this opinion.