EqMICkYIBxgCKkCV5mOdDLlUKeZ4bgGjYDmGzBfzZgXoV0j5lBEMwhzzS4C59p6xYtKA7PzB8Y5pdLmGZcjNqmKIaMWmH_2UEW7EgzmjhujM7XWfAUaAiw+0+wiMKeN+qg0Mq9E86GeOo05o1a7OKlefVTF8SLTnPzaOwWEAuPrqs2IeGfxC5+5sWUBkPHHWQE/xAg0SZ2hWF7XL6iO6oc4oeetc3lBmPZTQTMFl1/LTHC8FvxEo2cUJZsbO6pCP0Fdd4ls96mDKVYddWrpVnWwgFoXUQ/j2IdOzSlQ2fJ4vK0pjBPMP+8n2pNz4t8BEi9eLyFOXjAgzkoBzzD6o/FgIK4sEBvvDNC98BtLA5KxrR4EZcJ5fsf5/25awfCBYJMkDhmdzFBSc4Dkkae07dqRKqPbP45iVgYTJs0zmrJcIbbuJHRZG7l9FP3jmH5URXIsAAxWCKdVCedGTrwDaYPr2x3NK4kFZ/zqHoFljyl9oY+BNBaJTs/RYPFoyfWa72q4J0dPPgBc61USm47GNWL6Sujmqf4Ojd2l+HqwuQ1+rv0w5Xwga56SVwJxsCFQWUyqQ1nfALn3dpFn/WshPvGRnHJ9vwRNPyvM0Ja6UkRztIdwGEjoPhmlHB1SnHmEOVzGJ+hjmhPC/hs+SJJ24h2zW2N9dQJm0oPpEygU0IjK3aDMJaS3VoJVTZ5WVze+RgJ6pySaPI3rjA3YihT5VFuO/xNqtGLhzFbQ4cmgzeOeAzLgfYtPgkZIQFkamEU9bnN/y3I2MzIFIdBdQHrfNJjjkClAyRK8sVcKmY5iwqDrnj/aXG9W7oetIA8z/lGpSqkYGAE=

Gould, Appellant, *v.* Argiro.
Argiro *v.* Phillips Oil Company, Appellant.

Argued May 25, 1966.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Avra N. Pershing, Jr.*, for plaintiff in case No. 490.

*John N. Scales*, with him *Henry E. Shaw*, and *Scales and Shaw*, for defendants in case No. 539.

OPINION BY MR. JUSTICE COHEN, June 24, 1966:

As a result of an accident involving appellants' truck and appellee's automobile cross-suits were instituted. The suits were consolidated for trial and the jury found in favor of appellee in both actions.

The opinion of the lower court recites that, after it retired to deliberate, the jury sent two requests for further instructions to the trial judge. The questions were: 1. "Since this was a dual transmission truck, what gear was it in as it approached the top of the hill?" 2. "What is the top union wage for welders?"

To each of these questions the judge indicated that he gave the following answer: "You must remember the testimony as given by the witnesses on the witness stand."

The lower court's opinion further discloses that at the time the questions were posed and answered neither counsel was present. Apparently, the trial judge made no effort to contact counsel before responding to the jury's interrogatories. Although the responses were in writing, they were transmitted through a tipstaff and were not preserved. Neither the questions nor the answers appear in the official record. The questions and replies, therefore, were recorded only in the trial judge's recollection.

The potential impediments to a fair proceeding inherent in these practices necessitates the grant of a new trial.

While the jury is deliberating, counsel must hold himself available to the court. Corresponding to the

duty of counsel is that of the trial judge to have no intercourse with the jury in the absence of counsel. Thus, the court may have the suggestions of both counsel in preparing its additional charge, and prompt objection to the charge as given may be made. We have said this many times. *Glendenning v. Sprowls*, 405 Pa. 222, 174 A. 2d 865 (1961); *Hunsicker v. Waidelich*, 302 Pa. 224, 153 Atl. 335 (1931); *Sommer v. Huber*, 183 Pa. 162, 38 Atl. 595 (1897).

Although we have in the past held that to warrant a new trial prejudice must arise from the trial court's instruction in the absence of counsel, *Sebastianelli v. Prudential Insurance Company of America*, 337 Pa. 466, 12 A. 2d 113 (1940), we have more recently said: "In many cases no one can say with certainty that a litigant's case has or has not been adversely affected by an intrusion of a Judge into the secrecy of the jury room, even though the intrusion was worthily motivated. This Court has, on prior occasions, warned trial Judges that they are not to enter the jury room or *privately communicate with the jury* under any circumstances. . . ." (Emphasis supplied). *Glendenning v. Sprowls*, supra at 224.

The error here committed, therefore, requires a new trial regardless of prejudice.

There is another reason why this case must be remanded for a new trial. The additional instructions must be made a part of the record. That was not properly done here. The facts disclose that the written response of the trial judge was not preserved. Neither were the questions and responses immediately made a part of the record. As was also said in *Glendenning v. Sprowls*, supra at 226, "We cannot safely leave . . . the language of a Judge's private communication to the memory or to the subsequent recollection or interpretation of the trial Judge and possibly different recollection or interpretation thereof by jurors."

In the case of *Sommer v. Huber*, supra, the trial judge received from the jury requests for instructions, to which he returned written answers. Defendants were not present and were not advised of the occurrence until the verdict was rendered and the jury was discharged. The communications between the judge and the jury were not preserved. In awarding a new trial this Court said at page 167: "It is important that the litigants should know what instructions affecting the issues between them were given to the jury in their absence. For them to know that instructions had been privately communicated to the jury, and to be unable to ascertain what they were, is quite likely to create a suspicion of unfairness and to impair their confidence in the court. An erroneous instruction given to the jury in open court, and in the presence of the parties and their counsel, is not so objectionable as the secret instruction of which there is no record, and the nature and effect of which cannot be definitely ascertained. The former may be intelligently reviewed while the latter cannot be. The verdict, however, may be set aside, or the judgment entered upon it may be reversed on the ground of an unwarranted departure from the rule which condemns secret instructions to the jury in relation to questions raised by the pleadings or the evidence, as opposed to the proper administration of justice."

Our decision in this matter makes unnecessary any discussion of the propriety of the manner in which appellants chose to object to certain language in appellee's summation.

**Judgments reversed and case remanded for a new trial.**

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I agree with the generalizations set forth in the majority Opinion, but not with the result. I agree with

Justice MUSMANNO that the answer of the trial Judge to the two questions asked by the jury—which was sent out by the Judge to the jury in the absence of counsel for both parties—was so innocuous, de minimis, non-prejudicial, and non-precedent forming, that it does not justify a new trial.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Majority Opinion in this case can be summed up quite succinctly in Shakespeare's phrase: Much Ado About Nothing. During the jury's deliberation, the jury sent to the trial judge two requests for additional instructions, namely: 1. "Since this was a dual transmission truck, what gear was it in as it approached the top of the hill? 2. "What is the top union wage for welders?"

To each of these questions, as the Majority Opinion points out, the judge gave the following answer: "You must remember the testimony as given by the witnesses on the witness stand."

The Majority is ordering a new trial because of these answers and I repeat: Much Ado About Nothing. Who was hurt by the judge's answers? No one. The answers were as innocuous as a soft zephyr of a summer's evening. They merely reminded the jury that it was its job to recollect the testimony. The jury had not asked for instructions on law. They asked about facts adduced at the trial. They were as well qualified as the judge to recall what was said about these items at the trial, and the judge so told them as he was required to do.

The Majority complains that the judge gave his answers to the jury in the absence of trial counsel, but it fails to state that counsel for both sides appeared in the courtroom while the jury was still deliberating, and they were informed about the questions submitted by

the jury and the answers advanced by the judge. Neither counsel objected to this procedure, neither counsel asked the court to amplify what the judge had said to the jury, and neither counsel excepted in the slightest to what had been done.

In the Majority Opinion filed this date in the case of *Lobalzo v. Varoli*, 422 Pa. 5, the Majority said that "counsel shall not sit idly by," during any crucial proceeding in the trial and then ask for a new trial if the verdict goes against him. In the case at bar, appellant's counsel not only sat "idly by," but practically went to sleep. He was not in the courtroom when what he complains about happened, and then when he finally showed up in the courtroom he not only again sat idly by—he remained as silent as the sphinx, and now the Majority proclaims for him.

The Majority Opinion says that the trial judge should "have no intercourse with the jury in the absence of counsel." Here again the bard of Stratford-on-Avon must speak: Much Ado About Nothing. The judge's communication with the jury was meager, taciturn—it was practically uncommunicative. If it had merely told the jury the state of the weather, it could not have been less controlling on the verdict. And yet on this exchange of weather signals the Majority orders a new trial.

In the *Lobalzo* case, the Majority, refusing to consider the complaints of the appellant attorney who charged that the trial judge failed to instruct the jury on contributory negligence, misstated the law of proximate cause, and confused the facts, declared that a new trial was impossible because, it said, "counsel sat idly by". But here the Majority does order a new trial, although counsel also "sat idly by," and, by ordering a new trial, the Majority adds to the "further burdening of our trial courts," which the Majority deplored in the *Lobalzo* case.

No one is consistent throughout his whole life. Everybody at some time or another says something this year which conflicts with what he said last year, or last month, last week, or even yesterday, but I should think that the highest appellate court in this Commonwealth should try to be consistent throughout one particular day. It should not on the same day, as it does in the *Lobalzo* case, condemn an attorney for "sitting idly by" and then reward another attorney, as in this case, for the same type of idle squatting.

Apparently aware that the reason just discussed is hardly enough on which to base so drastic an order as compelling repetition of a trial already completed, the Majority says that the written message of the trial judge was not preserved. Here indeed is an abundance about nothing. What was the message given by the Judge: "You must remember the testimony as given by the witnesses on the witness stand." And because this monumental instruction, this phenomenal utterance, this historical pronouncement has not been immortalized in the documentation of the case, a new trial, with all its expense, time consumption, suspense and worries, must be performed. This is not only Much Ado About Nothing; it is Exuberance about Zero. Appellants' counsel has stated that no record was made of the questions and answers but he does not in his brief specify the absence of these innocuous slips of paper as a reason for a new trial. It would have been desirable if the slips had been retained, but no one questions the correctness of the judge's recollection of what they contained. Moreover, it would have been a simple matter for counsel to have gotten affidavits from the jurors as to the wording of the missives, if any one really thought their preservation was vital.

And then, even if it were to be assumed that the judge should not have sent any message to the jury in the absence of counsel to the jury, this hypothetical ir-

regularity would not invalidate the trial unless the given instruction contained error and no one can contend that it did. In *Sebastianelli v. Prudential Insurance Company*, 337 Pa. 466, our eminent jurist Justice HORACE STERN, later Chief Justice of this Court, said that where a judge instructs the jury in the absence of trial counsel, and "no error appears in the instructions given," the losing party "has no grievance." Since there was no error here in the judge's instruction, the Majority's ordering of a new trial is wholly out of place, if *Sebastianelli* is still the law.

But, the Majority says, *Sebastianelli* is no longer the law and points to the case of *Glendenning v. Sprowls*, 405 Pa. 222, as its annihilator. If there ever was a non sequitur in a Court decision, an improper citation of precedent and an attempt to make much out of nothing, this is it. The *Glendenning* case is so different from the *Sebastianelli* case in its facts, setting, dramatis personae, scenery, legal principles and procedure involved that one must wonder whether the Majority reviewed it before citing it, even though the writer of the Majority Opinion here was on this Court when *Glendenning* came down.

Let us refresh ourselves with *Glendenning*. That case had absolutely nothing to do with a judge sending a message to the jury. It had to do with a judge practically taking up quarters in the jury room. While the jury was deliberating, the judge went into the jury room six times and on one occasion accompanied a juror to the telephone as the latter talked to his wife. In explaining how it came about that the judge almost turned the passage between his chambers and the jury room into a revolving door, the judge related that he went into the jury room to provide the jurors with a pitcher of water; to arrange for a ride home for a juror; to tell the jury to refrain from arguing too loudly because they might be overheard; to allow a juror to

leave the jury room and telephone his jealous wife (!) in the presence of the Judge; and to tell a juror that it was none of the jury's business when a juror asked him if insurance had anything to do with the case. Short of swinging a hammock in the jury room and undulating in it to the rhythm of the jury's animated discussions, it is difficult to conjure up a more companionable association between judge and jury than *Glendenning* where the judge played water boy, transportation clerk, and heart salver.

And yet, on this showing of facts which is no closer to the facts in this case than Pluto is to Mercury the Majority says that *Glendenning* modifies or cancels out *Sebastianelli*. To cite *Glendenning* as authority for ordering a new trial because a judge transmits two inconsequential greetings to the jury is to use a sledge hammer to kill a flea.

The appellants argue some very serious questions before us on appeal. They claimed that they were seriously wounded by elephantine missteps on the part of the trial court. The Majority here has ignored these averred disablements and directed its whole therapeutic attention to a flea bite.

So far as a decision on the real issues in this case the appellants got no enlightenment but since they did get a new trial, Shakespeare's words are eminently applicable to them: All's Well That Ends Well; for the appellees, all their efforts to hold a verdict justly won, have become Love's Labour Lost. But for the legal profession, ever eager to add to its store of knowledge on procedure, I can only repeat that the Majority Opinion is Much Ado About Nothing.