## Kersey Manufacturing Co., Appellant, *v.* Rozic.

Argued April 19, 1966. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*William C. Robinson,* with him *Henninger & Robinson,* for appellant.

*Harry K. McNamee,* with him *Marshall, Marshall, McNamee & MacFarlane,* for appellee.

Opinion by Mr. Justice Jones, September 27, 1966:
The sole question raised on this appeal[1] is whether the action of a trial judge in communicating with a

---

[1] In the Superior Court an additional question—involving the parol evidence rule—was argued. That question is not before this Court.

jury, through a court crier and in the absence of unnotified counsel, requires the grant of a new trial?

On April 10, 1959, Kersey Manufacturing Co. (Kersey) instituted an assumpsit action in the Court of Common Pleas of Butler County against August Rozic (Rozic). Suit was based upon a written conditional sales contract involving certain heavy machinery. After a jury trial, the jury returned a verdict against Kersey and in favor of Rozic. Motion for a new trial was refused, a judgment on the verdict entered and an appeal taken to the Superior Court.[2] The Superior Court affirmed the judgment[3] (207 Pa. Superior Ct. 182, 215 A. 2d 323) and we granted an allocatur.

The factual background essential to a determination of the question raised on this appeal is as follows: after the jury had deliberated for approximately two hours, the trial judge left the court house and went out for dinner and, while at dinner, received a telephone call from the court crier who advised the trial judge that the jury had sent a note to the judge which read as follows: "We have taken quite a few ballots & just cannot agree. We all feel that both parties are at fault and each should share the loss. If you have any suggestions, please advise. [Signed by the foreman].": the trial judge, by telephone, instructed the court crier to write on the bottom of the note and return to the jury the following instruction: "Continue your deliberations. Review the evidence and come to a decision to the Best of your Judgment." When this instruction was given, neither attorney had been notified of the jury's request nor was either counsel present

---

[2] One appeal, taken before the entry of judgment, was quashed (205 Pa. Superior Ct. 551). The second appeal was taken subsequent to the entry of judgment.

[3] Judge HOFFMAN filed a concurring and dissenting opinion, in which Judge JACOBS joined.

when the instruction was given. Shortly after the instruction was given the jury returned its verdict. The next day Kersey's counsel learned of the incident.

When the trial judge was approached about the incident, the note—which had not been made a part of the record—was produced from the judge's desk[4] and it was the trial judge's recollection that the instruction placed on the note was "substantially" as given by him.

Over eighty years ago, this Court in *Earon v. Mackey*, 106 Pa. 452 (1884) stated: "It does appear, however, in a note, appended by the learned Judge to his charge, that after being out all night the jury in a paper signed by their foreman asked a question, which was answered by the court in the affirmative, but [the judge] does not say the answer was conveyed by a tipstave. If it was so communicated to the jury, not then in the presence of the court, the proceeding was irregular and erroneous; . . ." (at pp. 457, 458).[5]

In *Hunsicker v. Waidelich*, 302 Pa. 224, 232, 153 A. 335, we stated: "Instructions to the jury must be given in open court in the presence of the parties or their counsel. There may be no private communication of any kind or character between the judge and the jury, and if additional instructions are needed they must be given in open court."

In *Glendenning v. Sprowls*, 405 Pa. 222, 174 A. 2d 865, Chief Justice Bell emphatically stated: "We cannot safely leave a Judge's intrusion into a jury room to a consideration of his motives, or the language of a Judge's private communication to the memory or to the subsequent recollection or interpretation of the

---

[4] Upon motion of Kersey's counsel, the note was incorporated into the record approximately five months subsequent to the verdict.

[5] This matter, however, was not *properly* brought to the attention of this Court in *Earon*, hence, not decisive.

trial Judge and a possibly different recollection or interpretation thereof by jurors. We strongly condemn any intrusion by a Judge into the jury room during the jury's deliberations, or any communication by a Judge with the jury without prior notice to counsel, and such practice must be immediately stopped!" (at p. 226).

More recently, this Court in *Gould v. Argiro*, 422 Pa. 433, 434, 220 A. 2d 654 said: "The lower court's opinion further discloses that at the time the questions were posed and answered neither counsel was present. Apparently, the trial judge made no effort to contact counsel before responding to the jury's interrogatories. Although the responses were in writing, they were transmitted through a tipstaff and were not preserved. Neither the questions nor the answers appear in the official record. The questions and replies, therefore, were recorded only in the trial judge's recollection.

"The potential impediments to a fair proceeding inherent in these practices necessitates the grant of a new trial.

"While the jury is deliberating, counsel must hold himself available to the court. Corresponding to the duty of counsel is that of the trial judge to have no intercourse with the jury in the absence of counsel. Thus, the court may have the suggestions of both counsel in preparing its additional charge, and prompt objection to the charge as given may be made. We have said this many times: Glendenning v. Sprowls, 405 Pa. 222, 174 A. 2d 865 (1961) ; Hunsicker v. Waidelich, 302 Pa. 224, 153 Atl. 335 (1931) ; Sommer v. Huber, 183 Pa. 162, 38 Atl. 595 (1897).

"Although we have in the past held that to warrant a new trial prejudice must arise from the trial court's instruction in the absence of counsel, Sebastianelli v. Prudential Insurance Company of America, 337 Pa.

466, 12 A. 2d 113 (1940), we have more recently said: 'In many cases no one can say with certainty that a litigant's case has or has not been adversely affected by an intrusion of a Judge into the secrecy of the Jury room, even though the intrusion was worthily motivated. This Court has, on prior occasions, warned trial Judges that they are not to enter the jury room or *privately communicate with the jury* under any circumstances . . . .' (Emphasis supplied). Glendenning v. Sprowls, supra, at 224. The error here committed, therefore, requires a new trial regardless of prejudice.

"There is another reason why this case must be remanded for a new trial. The additional instructions must be made a part of the record. That was not properly done here. The facts disclose that the written response of the trial judge was not preserved. Neither were the questions and responses immediately made a part of the record. As was also said in Glendenning v. Sprowls, supra, at 226, 'We cannot safely leave . . . the language of a Judge's private communication to the memory or to the subsequent recollection or interpretation of the trial Judge and a possibly different recollection or interpretation thereof by jurors.' "

In the case at bar, the trial judge—a jurist of great integrity—innocently and inadvertently, through the court crier, did communicate with the jury and no doubt the nature of that which was communicated was innocuous. However, the practice of trial judges in communicating with the jury or instructing the jury in any manner whatsoever, *other than in open court and in the presence of counsel for all parties,* must be terminated. The difficulty inherent in the rule enunciated in *Sebastianelli v. Prudential Insurance Company of America,* 337 Pa. 466, 12 A. 2d 113—that in order to justify a new trial where communication between a trial judge and a jury has taken place, other than in open court and counsel's presence, prejudice

must be shown to have arisen from the trial court's communication—was well expressed in *Hunsicker*, supra: "There is no way of determining the influence which such act might have on the minds of the jury, and the only safe course is to avoid all questions by strictly adhering to the long established practice which requires all deliberations by the jury to be conducted in the utmost privacy." (at p. 232). It is the *possibility*, rather than the *actual fact*, of prejudice which leads us to condemn communication vis-a-vis the trial judge and the jury made other than in open court and counsels' presence. The fact such communication, however innocent, took place in the case at bar requires a new trial.

Judgment reversed and a new trial granted.[6]

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the majority's disposition because I believe that the appellant has shown a sufficient degree of possible prejudice as to warrant a new trial. However, while I agree that the practice of trial judges in communicating with a jury ex parte should be discouraged, I am unable to agree with the majority's course of action, the adoption of a prophylactic rule.

In the instant case the jury's task was to determine whether the appellee had breached his contract, not to allocate blame. The jury's note to the trial judge stating that they "feel both parties are at fault and each should share the loss" indicates their complete confusion as to the legal issues involved. Under such circumstances, the failure to give additional in-

---

[6] The distinction drawn in the court below between "additional instructions" and other communications and its conclusion that in the case at bar the jury was not requesting "additional instructions" is of no moment. The vice lies in *any* form of communication between court and jury other than in open court and counsels' presence.

structions, or at least to inform counsel of the confusion, constituted prejudicial error. Cf. *Worthington v. Oberhuber,* 419 Pa. 561, 215 A. 2d 621 (1966).

We have frequently stated that " 'a proper administration of justice requires that new trials be not granted on errors which counsel had ample opportunity to correct. . . .' " *Segriff v. Johnston,* 402 Pa. 109, 113, 166 A. 2d 496, 499 (1960) ; see *Lobalzo v. Varoli,* 422 Pa. 5, 220 A. 2d 634 (1966) ; *Hill v. Gerheim,* 419 Pa. 349, 214 A. 2d 240 (1965). Since, in the situation encompassed by this case, counsel was not afforded an opportunity to correct the error, the holdings of the above cases are not controlling. However, their reasoning, in part founded on the belief that a party should not be permitted to impose extensive litigation on his adversary and our already overburdened trial courts without a showing of fundamental error or incurable prejudice, should lead this Court away from the strict stance taken by the majority.

I have previously stated that I heartily approve of the grant of a new trial in any case where justice requires it. See *Lobalzo v. Varoli,* 422 Pa. 5, 8, 220 A. 2d 634, 636 (1966) (concurring opinion). Thus, when error is committed during the course of a trial, which counsel could not have corrected, there is a presumption that the error is prejudicial. But this presumption need not be irrebuttable; opposing counsel should be permitted an opportunity to show that the error was harmless.

This does not mean that there are not occasions when per se rules are warranted. A prime example of the necessity for such rules is in the area of criminal procedure, where the accusatorial system, the constitutional guarantee of a fair trial, and the presumption of innocence, combine to admonish an appellate court not to substitute its belief of guilt, however justified it may seem to us on the record, for the independent

ascertainment by a jury. See, e.g., *Estes v. Texas,* 381 U.S. 532, 85 S. Ct. 1628 (1965) ; *Rideau v. Louisiana,* 373 U.S. 723, 83 S. Ct. 1417 (1963). Or a prophylactic rule may be in order where the goal is to deter undesirable and potentially dangerous conduct. Cf. *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684 (1961) ; *Miranda v. Arizona,* 383 U.S. 903, 86 S. Ct. 1602 (1966).

However, I see nothing to be gained from adopting a prophylactic rule in the instant situation. The reason for prohibiting a trial judge from communicating with a jury ex parte is to prevent the court from unduly influencing the jury and to afford counsel an opportunity to become aware and to seek to correct any error which might occur. Where there is no showing either that the court's action may have influenced the jury or that its directions were erroneous, then the reason for the rule dissolves.

Trial judges are rarely afforded the luxury of time given to the appellate bench to carefully consider and reconsider each decision they make during the course of a trial. Thus, I do not think it is necessary to reprimand a trial judge for making a perfectly understandable mistake provided that no one is prejudiced thereby. By imposing a per se rule, the loss falls upon the successful party below, who in all probability will prevail on retrial, although he will have been forced to expend additional time and money, and on other litigants whose cases will be delayed because of the addition to trial court backlog.

Thus, I see no justification and much mischief from the majority's rule and I am unable to lend my approval.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I disagree—the Judge's communication to the jury, "Continue your deliberations. Review the evidence and

come to a decision to the Best of your Judgment."—was *not an instruction* to the jury as that term is used and understood, and was merely a harmless error.