## Commonwealth *v.* Engle, Appellant.

*Criminal law—Arson—Character witnesses — Evidence of commission of other crimes—Limitation.*

A witness who has testified in chief to the good character of the defendant may be asked, on cross-examination, whether or not he had heard of certain offences, specifying them, charged against the defendant before the beginning of the then prosecution. This is allowable only on cross-examination, not as evidence affecting the character of the defendant, but as evidence affecting the credibility of the witness testifying to good character. Such inquiry is permitted only for the limited purpose of ascertaining the opportunities, sources and extent of knowledge of the witness on the point of the general reputation of the defendant, and not to show that he was probably guilty of the other offences.

*Practice, Q. S.—Exhibits—Formal offers—Consideration by jury.*

It is not reversible error to refuse a new trial because a paper, that had not been formally offered in evidence was examined by the jurors in their room, where it appeared the paper was but a sketch of a floor plan drawn by the witness while on the stand to illustrate

his testimony; had been examined by court and counsel and by each juror in the box, and had been used in the argument of counsel as if admitted in evidence.

Argued October 14, 1919.   Appeal, No. 156, Oct. T., 1919, by defendant, from judgment of O. & T. Philadelphia Co., Sept. Sess., 1918, No. 611, on verdict of guilty in the case of Commonwealth v. Louis Engle.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ.   Affirmed.

Indictment for arson.   Before AUDENRIED, P. J.

The opinion of the Superior Court states the case.

Verdict of guilty upon which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were various rulings on evidence and the allowance of certain drawings made by a witness, to be taken to the jury room.

*B. I. deYoung,* for appellant, cited: Stout v. Rassel, 2 Yeates 334; Elliott v. Boyles, 31 Pa. 65; Commonwealth v. Brown, 23 Pa. Superior Ct. 472; Hagan v. Carr, 198 Pa. 608.

*James Gay Gordon, Jr.,* Assistant District Attorney, and with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY HEAD, J., December 1, 1919:

The defendant was tried on a bill of indictment charging the commission of the offense of arson and was duly convicted and sentenced.

On the trial two witnesses were called by him to testify to his previous good reputation.   On cross-examination, the district attorney was permitted to inquire of the character witness whether he had not heard of the defendant having been charged with the commission

of another crime 'and a warrant having been issued for his arrest. Objection was made by the defendant's counsel which was overruled and this action of the court is complained of in the first and second assignments of error. The principle on which such cross-examinations have been allowed has been frequently stated and is well recognized. In Smith v. The State, 103 Ala. 70, the Supreme Court thus defines it: "A witness who has testified in chief to the good character of the defendant may be asked on cross-examination whether or not he had heard of certain offenses, specifying them, charged against the defendant before the beginning of the then pending prosecution. This is allowable only on cross-examination, not as evidence affecting the character of the defendant, but as evidence affecting the credibility of the witness testifying to good character." So, in People v. Elliott, 163 New York 13, the court of errors and appeals said: "It was competent for the district attorney to ask the witnesses who had testified to defendant's good character whether they had heard of the divorce proceeding (wherein the defendant had been charged with treating his wife in a cruel and inhuman manner) and if so whether it qualified to any extent their previously expressed opinion as to the defendant's good character." In Commonwealth v. McClellan, 42 Pa. Superior Ct. 507, it was said by our late Brother BEAVER: "Defendant raised the question as to his honesty and introduced a number of neighbors to testify that they had never heard anything derogatory to his character for honesty. Upon cross-examination, the Commonwealth asked whether or not the several witnesses had not heard that he had burned his store to collect the insurance. As none of the witnesses had heard it and all denied that they had, the defendant was not in any way injured thereby. It was, it seems to us, however, an entirely legitimate subject of inquiry, because it went to the very essence of the question under investigation, namely, what was the defendant's reputation for honesty

in the community in which he lived? The witnesses were not examined as to other offenses." Finally, in Commonwealth v. Principatti, 260 Pa. 600, the Supreme Court, reversing a judgment of murder in the first degree and sending the cause back for another trial, adverted to a number of matters for the purpose of guiding the course of the new trial. On the subject now before us, Mr. Justice MOSCHZISKER said: "if the fact that the defendant had been accused of killing another man is again brought forward in the same way as at the last trial, the jury should be instructed as to the relevancy of the testimony upon that subject, and that inquiry concerning the matter is permitted only for the limited purpose of 'ascertaining the opportunities, sources and extent of the knowledge of the respective witnesses on the point of the general reputation of the defendant, and not to show that defendant was probably guilty of the other offense.'" The first and second assignments are overruled.

One of the witnesses of the Commonwealth was examined and cross-examined at considerable length in the effort by counsel on both sides to place before the jury a reasonably accurate and intelligible description of the building and its various floors and particularly of that floor where the fire originated. At the instance of the trial judge and for the purpose of making more plain the description, the witness was permitted to take pencil and paper and then and there produce a sketch of the top floor of the building, which exhibited to the eye what his oral testimony had sought to make plain through the ear. The use of this sketch that was made during the trial is thus stated by the court below in the opinion refusing a new trial: "Upon this sketch the witness was cross-examined by counsel for the defendant. Without objection on the part of the defendant although it had not been formally offered in evidence, it was then handed to the foreman of the jury. From him it was passed to the next juror and so on until it had been seen and examined by every one of the jury, the examination of

witnesses being meanwhile suspended.   When counsel
for the defendant came to address the jury, he laid this
plan on the rail before the jury box, and upon it based
much of his argument against the credibility of the testi-
mony of the Commonwealth's witness, James Lyons,
who had sworn that from a window on the third floor
of the house across Catherine street opposite the build-
ing that was burned, he had noticed a red flame on the
northwest corner of the sixth floor of the latter build-
ing."   As already stated, for some reason, probably by
a mere oversight, the sketch was not offered in evidence
and was not sent out with the jury.   During their de-
liberations they had the officer in attendance, bring it
to the jury room and there reëxamined it and, because
of this, the defendant's counsel urged in the court be-
low and here that there had been a mistrial and that
defendant was entitled to have his case heard again be-
fore another jury.   Manifestly, such a question must be
properly disposed of in the court below by the exercise of
a sound judicial discretion.   In the language we shall
now quote from the opinion refusing a new trial, we
think that court has expressed, as well as we could do,
the reasons that lead to the conclusion that no wrong
was done to the defendant: "Under these circumstances
it cannot fairly be said that the Tyler sketch was not
part of the evidence in the case.   Standing by itself, it
had of course no evidentiary value, but it was part and
parcel of Tyler's testimony and was as much in evidence
as anything said by him.   Since it had been shown to
the jury during the trial and discussed by the counsel
in their arguments to the jury, it was (not improper)
proper for the jurors to take it out with them to their
room or to call for it after their retirement.   It certainly
was not prejudicial to the defendant to permit them to
examine again the plan upon which his counsel had
rested his principal argument."

We suppose we may concede that, as a general rule,
the jury are not to take with them to the jury room any

documents except those formally offered in evidence and admitted by the court; but if we are to value the substance more than the shadow, we must conclude with the court below that in substance and reality the paper had become a part of the evidence, even though not technically admitted. We further agree with the learned court below that neither in Hagan v. Carr, 198 Pa. 606, nor in Geist v. Rapp, 206 Pa. 411, has it been declared that what was done in this case amounted to reversible error. In the first of the two cases cited, a handwriting expert prepared a handmade sketch illustrating merely a theory upon which he reached the conclusion that a certain piece of handwriting was a forgery. It was not and it did not purport to be an eye picture of any existing physical fact. It had not been examined by the jury nor made use of by counsel because the trial court had declined to admit it in evidence and it was this action that was assigned for error.

Upon a review of the whole record we are satisfied the evidence made out a case that fully supported the verdict of the jury; the defendant was denied no right secured to him by the law of the land, and there was no such abuse of the discretionary power lodged in the court below as to necessitate a new trial.

The assignments of error are overruled and the record is remitted to the court below to the end that the sentence heretofore imposed may be carried into execution.