## Commonwealth v. Beck, Appellant.

Argued April 14, 1936.

124

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Julius M. Rapoport,* with him *Eugene J. Gorman,* for appellant.

*John L. Cutshall,* District Attorney, with him *Edwin K. Kline* and *Joseph E. Gehringer,* Assistant District Attorneys, for appellee.

Opinion by Stadtfeld, J., May 8, 1936:

The appellant, a physician of the City of Allentown, was charged with having used instruments and drugs upon one Martha Mattoon, with intent to procure a miscarriage, with having produced that result, and with having those unlawful means in his possession for the purpose of causing an abortion. The lower court at the trial, quashed counts five to sixteen inclusive, and at the close of the Commonwealth's case, count two was eliminated, and the case was submitted to the jury on counts one, three and four, upon which appellant was found guilty. Upon motion in arrest of judgment, judgment was arrested on the verdict on the first and fourth counts, and appellant was sentenced on count three, to pay a fine of One Hundred ($100.00) Dollars,

costs and undergo imprisonment in the Lehigh County Prison for a period of not less than one year nor more than two years. From the judgment and sentence on this count, which charged the defendant with intent to procure a miscarriage by the use of an instrument, defendant appealed.

Mrs. Martha Mattoon testified that she was pregnant, as a result of her adulterous relations with one Robert Kuhns, who took her to the appellant's office on the evening of December 14, 1934, where the criminal operation took place. She described what the appellant did to her, after she told him she was pregnant, how he inserted a vaginal inspector and another instrument, which, when inserted, caused a sensation similar to a needle prick.. She did not see the operation performed, although she saw the appellant sterilize instruments and felt the use of the same in her body, and one was a long, thin, silver colored instrument. After the bleeding commenced, the appellant packed her with gauze. The next day she began to have an excessive menstruation, which subsequently developed into a hemorrhage, for which she was confined to a hospital for approximately thirty days.

The defendant appellant testified in his own behalf that he was a graduate of the University of Maryland with a degree of M. D. obtained in the year 1916; that he served in the United States Army during the World War from which he was honorably discharged in 1919 as a captain. That immediately thereafter he established his practice in the City of Allentown, becoming a member of the staff of the Allentown Hospital, with which hospital he has been connected for a period of years doing free clinical work, and of which hospital staff he is still a member. He admitted that Mrs. Martha Mattoon and Robert Kuhns came to his office on the evening of December 14 for the purpose of ascertaining whether or not the said Mrs. Mattoon was pregnant.

It was further shown that she had taken pills and used other violent means to induce a miscarriage of herself for at least one month prior to the alleged visit to the office of the defendant.

The defense further showed that Mrs. Mattoon was a woman of loose morals and that she had gone out with and entertained many men, three of whom were in court and testified as to actual occurrences and specific instances of misconduct on her part. In addition, it was shown by the testimony of two witnesses, that Orville Mattoon, husband of Mrs. Martha Mattoon, admitted that he wanted to profit out of his wife's conduct by getting one thousand dollars out of the case.

There are seven assignments of error. The first relates to the refusal of appellant's motion for a directed verdict; the second, third and fourth to permitting the introduction of certain evidence and rulings thereon; the fifth and sixth to the refusal to grant a new trial, and the seventh in pronouncing the sentence referred to.

It is unnecessary to consider the assignments in detail, since one error appears which we regard as fatal to the judgment. The fourth assignment avers that "the court erred in permitting the introduction of evidence and rulings thereon, and in refusing to withdraw a juror in connection therewith" in reference to the cross-examination of Dr. H. Cotter Boyle, a character witness for the defendant.

The defendant had testified in his own behalf in chief that he lived at "134 N. Franklin Street," City of Allentown, and that his office was at 402 Hanover Avenue. Under cross-examination he testified that he had stopped living with his wife about eight years ago, and that during that period of time he had maintained a home or lived at 1215 North Nineteenth Street and at 134 Franklin Street with a Mrs. Viehdorfer. When subsequently Dr. H. Cotter Boyle was called as a character witness for the appellant, and testified to defend-

ant's reputation as a peaceable and law-abiding person, the following cross-examination was permitted under objection: "Q. You know that Doctor Foster Beck is not living with his wife? By Mr. Rapoport: If the Court please that is not proper cross-examination. By Mr. Frederick: You asked if he was a law abiding citizen. By the Court: The objection is overruled. By Mr. Rapoport: Exception. By the Court: Exception is noted. Q. You know that as a fact? A. I do not. Q. You heard Doctor Beck admit this morning on the stand— A. I did not hear Doctor Beck's testimony. Q. If you had heard him admit on the stand that he lived with another woman— By Mr. Rapoport: He didn't admit that and we ask for the withdrawal of a juror, that is highly prejudicial. By Mr. Frederick: He said he was living with her at two places. By Mr. Rapoport: I'd like to have the District Attorney's remarks put on record. By the Court: Which remarks? By Mr. Rapoport: His remarks about him living with another woman. By the Court: The remarks can be put upon the record. The motion to withdraw a juror is over-ruled. By Mr. Rapoport. Exception please. By the Court: Exception is noted. By Mr. Frederick: Before we proceed further I should like to have the testimony checked. The testimony in question was referred to by the Court Stenographer and read to the Court. Q. If you had heard Doctor Beck say on the stand that he was living at 1215 North Nineteenth Street with a woman other than his wife would you still regard his reputation for being a law abiding citizen as good? By Mr. Rapoport: If the Court please, the Doctor didn't say he was intimate with her. By the Court: Mr. Frederick is using the same language that the Doctor used. By Mr. Rapoport: We ought to be fair. A. I think it's an unfair question to ask me. I know this man's reputation as a doctor. Q. Would

you still consider him as a law abiding citizen? A. I'd hate to answer that question yes or no. That's all."

That the self-evident effect of this cross-examination was to accuse the appellant of a specific crime is apparent from the expression of the lower court in the opinion by HENNINGER, J., wherein he uses this language: "We cannot believe that the Jury was so guileless that some of their members would not have drawn the same inference without the District Attorney's suggestion and, of course, have communicated the same to their fellows for acceptance or rejection." As a result, the defendant would necessarily be prejudiced in the eyes of the jury by the implications from this cross-examination. In a case of this kind, the only defense of a physician, in addition to his own denial, frequently is his reputation. Under the peculiar circumstances of the instant case, where the alleged commission of the offense depended substantially on the oath of Mrs. Mattoon on the one hand, and the denial by the defendant on the other hand, the reputation of the defendant was of the utmost importance.

The Supreme Court in Commonwealth v. Jones, 280 Pa. 368, 372, 124 A. 486, in an opinion by Mr. Justice FRAZER, condemned this character of cross-examination in the following language: "The second assignment charges the trial judge was in error in permitting the Commonwealth to ask, on cross-examination of a witness called to testify as to defendant's good character, whether the witness did not know defendant was a married woman living in adultery with an unmarried man. While this would have been proper to test the credibility of the witness and show the extent of his knowledge of the reputation borne by defendant, the evident purpose of the offer was to rebut the testimony of good character by showing defendant had committed a specific crime, and it must have been so understood by the jury, from the statement made by the trial judge

to counsel, inquiring whether one who lived in open adultery was a law-abiding citizen and whether one can 'commit all the other crimes in the calendar and still be a peaceful, law-abiding citizen'? Such statements in the hearing of the jury were bound to have a strong bearing on the verdict and tended to give the jurors a false impression as to the proper weight to be given them."

This case is referred to and approved in Commonwealth v. Thomas, 282 Pa. 20, 25, 127 A. 427. In the case last cited, Mr. Justice Schaffer quotes from Commonwealth v. Colandro, 231 Pa. 343, 80 A. 571, saying: "The practical effect of such cross-examination may well have been to brand the defendant as a bad man and to cause the jurors to approach a consideration of his defense from that standpoint, or at least to raise doubts in their minds in passing upon his character evidence."

The lower court in its opinion relies on the case of Commonwealth v. McGillicuddy, 82 Pa. Superior Ct. 437, and Commonwealth v. Engle, 73 Pa. Superior Ct. 138. Those cases simply decided that a witness who has testified in chief to the good character of the defendant may be asked on cross-examination whether or not he had heard of certain offenses, specifying them, charged against the defendant before the beginning of the prosecution. This is allowable only on cross-examination, not as evidence affecting the character of the defendant, but as evidence affecting the credibility of the witness testifying to good character.

An examination of the cross-examination of the witness in the instant case leads to the conclusion that the purpose of the prosecuting attorney was not to test the credibility of the character witness, but to bring home to the jury a particular inference from the testimony of the appellant that he was committing adultery, a conclusion not warranted by the evidence. The cross-examination was highly improper and the attempt to

impute adulterous relations on the part of appellant with the woman at whose home he was living was undoubtedly prejudicial to appellant.

This assignment of error is sustained and the judgment reversed with a venire.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.