## Commonwealth *v.* Jenkins, Appellant.

Argued January 20, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*A. Benjamin Johnson, Jr.,* for appellant.

*Vincent C. Veldorale,* Assistant District Attorney, with him *Arlen Specter,* Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 17, 1964:

The defendant, William Alfred Jenkins, after indictment and trial was found guilty by a jury of murder in the first degree. The sentence was fixed at life imprisonment. Following the denial of a new trial and imposition of sentence, an appeal to this Court followed.

An examination of the record discloses prejudicial error, which requires the grant of a new trial.

The grandmother of the defendant was called on his behalf to testify, inter alia, concerning his previous good reputation in the community. Immediately after her declaration that his reputation was excellent, the Commonwealth's counsel was permitted, over objection, to pursue cross-examination in the following manner: "Q. You had heard, hadn't you, that away back on July 9, 1953, he was arrested as a juvenile for burglary, malicious mischief. Going into Landrich School at 23rd and Federal Streets? You had heard that, hadn't you? . . . Q. You have heard, haven't you, that in December 1953, he had been arrested on a couple of charges of larceny and he at that time, you had heard, was taken away from home and had gone to Glen Mills?"

It is clear to us that this line of questioning was primarily for the purpose of calling to the attention of the jury particular acts of prior misconduct on the part of the defendant and was, therefore, improper. Character witnesses may legitimately be questioned as to whether or not they ever heard *persons in the neigh-*

*borhood* attribute particular offenses to the defendant. This is allowable for the purpose of testing the accuracy of the witness's testimony by showing that he or she is not thoroughly familiar with the reputation concerning which he has testified. However, prejudicial questions, which obviously are for the purpose of showing the commission of a specific crime or crimes for which the defendant is not presently accused, are not legitimate or fair on cross-examination. That the examination concerned was prejudicial is beyond argument. See, *Com. v. Beck,* 122 Pa. Superior Ct. 123, 184 A. 761 (1936); *Commonwealth v. Hurt,* 163 Pa. Superior Ct. 232, 60 A. 2d 828 (1948); *Commonwealth v. Thomas,* 282 Pa. 20, 127 A. 427 (1925); *Commonwealth v. Becker,* 326 Pa. 105, 191 A. 351 (1937).

The Commonwealth argues that because the questions were prefaced with the words, "You had heard," that the inquiries were necessarily directed to whether or not the witness had heard in the community that the defendant was charged with the commission of the crimes mentioned. But this does not follow. The witness could truthfully answer the questions affirmatively and "have heard" the matters referred to from the defendant personally, or from his counsel, or as a spectator or interested party at a hearing held in connection therewith.

The purpose of the foregoing questions was made more than clear by the cross-examination that followed: "Q. And you say this person with such a fine reputation, you arrested him, didn't you because he threatened to kill you?" While the objection to this highly inflamatory question was sustained, the harm was already done. The ruling mattered little. The jury had already "received the message." The motion to withdraw a juror should have been sustained.

The cross-examination of the Commonwealth's counsel was tainted with another infirmity. The question

included a reference to an adjudication made by the juvenile court, namely, that the defendant as a juvenile, had been committed to a correctional institution. One versed in juvenile court work knows that many factors enter into such an adjudication. On the other hand, bringing such information to the minds of a lay jury may well result in inaccurate and unfair deductions. Further, the Juvenile Court Act of June 2, 1933, P. L. 1433, §19, 11 P.S. §261, specifically prohibits the use in evidence of a prior juvenile court adjudication in any other court. Technically, the cross-examination under discussion may not constitute the "use" of the adjudication in evidence, but the end result was the same. The inquiry accomplished the harm, which the statute intended to prevent.

Judgment reversed and new trial ordered.