Commonwealth *v.* Selkow, Appellant.

274

Argued June 21, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Herbert K. Fisher,* with him *Bloom, Ocks & Fisher,* for appellant.

*Joseph M. Smith,* Assistant District Attorney, with him *William G. Klenk, II,* Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., September 16, 1965:

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of Philadelphia County entered upon a verdict of a jury finding the defendant-appellant, Herman Selkow, guilty of false pretenses and uttering a fraudulent instrument; and from the denial

of the court below of a motion for a new trial. The indictments charged the defendant with forgery and cashing checks drawn on the First Pennsylvania Banking and Trust Company, Philadelphia, Pa. The defendant testified in denial of the charges and presented the testimony of three character witnesses as to his reputation for honesty and as a peaceful and law-abiding citizen.

The defendant complains that the court committed fundamental error in permitting the cross-examination of his character witnesses concerning an alleged arrest for a crime committed in California and the introduction into evidence of a requisition of the State of California seeking the extradition of the defendant with attached affidavit to support the charges of passing worthless checks; and that the court below abused its discretion in refusing a new trial when his constitutional rights to a fair trial had been prejudiced by this action.

The questions complained of were a part of the cross-examination by the Commonwealth of his first character witness and were as follows: "Q. Did you hear, among those people that you have discussed Mr. Selkow's reputation, that in July of this past year he was arrested as a fugitive from California for passing worthless checks? . . . Q. With intent to defraud? A. No. Q. Have you heard about that arrest? A. Have I heard about it? Yes. . . . Q. You read about it in the newspapers? Did you know that he was presently wanted in the State of California for that crime? A. No, I didn't." In the examination of the second character witness, it went as follows: "Q. Have you heard, among these people that you have discussed Mr. Selkow's reputation of his arrest, and the fact that he is now wanted in California for issuing and passing checks without sufficient funds with intent to defraud? A. No, I haven't. Q. You have never heard of that? A. No." In examining the third character witness the

questioning went as follows: "Q. You heard the charges that he is wanted in California? A. This morning, yes." During the questioning, over the objection of the defendant, motions were made on several occasions for the withdrawal of a juror which were denied. The Commonwealth then offered and the court permitted the introduction of the requisition from the State of California for the return of the defendant on the charge of passing worthless checks for the purpose of supporting the testimony given.

The cross-examination of character witnesses as to specific acts of the defendant for the purpose of testing his knowledge of the speech of the community and his credibility is an exception to the general rule that does not permit impeachment of witnesses by extrinsic testimony of such acts. *Com. v. Butts,* 204 Pa. Superior Ct. 302, 204 A. 2d 481 (1964). ". . . Character witnesses may legitimately be questioned as to whether or not they ever heard persons in the neighborhood attribute particular offenses to the defendant. This is allowable for the purpose of testing the accuracy of the witness's testimony by showing that he or she is not thoroughly familiar with the reputation concerning which he has testified. However, prejudicial questions, which obviously are for the purpose of showing the commission of a specific crime or crimes for which the defendant is not presently accused, are not legitimate or fair on cross-examination." *Com. v. Jenkins,* 413 Pa. 606, 198 A. 2d 497 (1964).

In that case the Supreme Court said at page 608: "The Commonwealth argues that because the questions were prefaced with the words, 'you had heard,' that the inquiries were necessarily directed to whether or not the witness had heard in the community that the defendant was charged with the commission of the crimes mentioned. But this does not follow. The witness could truthfully answer the questions affirmatively

and 'have heard' the matters referred to from the defendant personally, or from his counsel, or as a spectator or interested party at a hearing held in connection therewith."

Although this exception exists it must be carefully restricted or otherwise it is highly prejudicial. As it is permitted only in the case of character testimony its weight is of little moment and no matter how restricted is still prejudicial.

The problem presented is well stated in Wigmore on Evidence, Vol. III, Sec. 988, page 619: "The rumor of the misconduct, when admitted, goes far, in spite of all theory and of the judge's charge, towards fixing the misconduct as a fact upon the other person, and thus does three improper things,—(1) it violates the fundamental rule of fairness that prohibits the use of such facts, (2) it gets at them by hearsay only, and not by trustworthy testimony, and (3) it leaves the other person no means of defending himself by denial or explanation, such as he would otherwise have had if the rule had allowed that conduct to be made the subject of an issue. Moreover, these are not occurrences of possibility, but of daily practice. This method of inquiry or cross-examination is frequently resorted to by counsel for the very purpose of injuring by indirection a character which they are forbidden directly to attack in that way; they rely upon the mere putting of the question (not caring that it is answered negatively) to convey their covert insinuation. The value of the inquiry for testing purposes is often so small and the opportunities of its abuse by underhand ways are so great that the practice may amount to little more than a mere subterfuge, and should be strictly supervised by forbidding it to counsel who do not use it in good faith."

If there ever was a case which illustrates the need for careful judicial restriction of this exception, this is

it. The questions in the instant case are even stronger than in *Com. v. Jenkins,* supra. Here, too, the Commonwealth used: "Have you heard . . .?"; "You read it in the newspapers?"; "You heard the charge he is wanted in California?". The obvious use of "wanted" and "fugitive" could only be for the purpose of showing evidence of guilt of the California charges to the jury.

Questions in these cases, where the problem of prejudice is always present, should be carefully drawn. He might very well have been asked: "From your knowledge of the speech of the community did you hear that the defendant was charged with passing worthless checks in California?" But the questions in this record go far beyond this and they, together with the improper admission into evidence of the record for extradition indicate the great anxiety of the Commonwealth to get into the record this criminal charge which it couldn't get before the jury in any other way.

Giving such information to the jury may well result in inaccurate and unfair deductions. The motion to withdraw a juror should have been allowed and the court below abused its discretion in refusing to grant a new trial.

Judgment reversed and a new trial ordered.

WRIGHT, J., would affirm upon the opinion of the court below.