405 A.2d 1252

**COMMONWEALTH of Pennsylvania**

v.

**Kim Lee MYERS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 13, 1978.

Decided June 13, 1979.

Petition for Allowance of Appeal Denied Dec. 6, 1979.

568

John D. Flinchbaugh, Assistant Public Defender, York, for appellant.

Sheryl Ann Dorney, Assistant District Attorney, York, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

The instant appeal comes to this court from appellant's conviction of involuntary manslaughter (18 Pa.C.S. § 2504). For the reasons stated herein, we affirm the judgment of sentence in the court below.

The facts giving rise to this appeal are as follows. On March 7, 1976, appellant was visiting at the home of his

brother-in-law, Daniel Gilbert. Located in the mildly undulating countryside of Manheim Township, York County, the Gilbert home sits atop a gently sloping hill. Some 150 to 200 yards from the home, the hill reaches its base where the terrain again begins to slope upward thus forming a shallow valley. As the hill opposite the Gilbert home slopes upward, a small knoll appears which is to the right when viewed from the residence.

On the afternoon of March 7, appellant and Daniel Gilbert decided to engage in a little target shooting. They erected several targets at the bottom of the hill in the valley, then took positions in the garage and commenced firing through open windows. After a period of time, appellant tired of this sport and trained the scope of his .270 caliber high-powered rifle at a road sign approximately 500 yards away on the opposite hill. After firing four or five shots interspersed with a shot by Daniel Gilbert, appellant again took sight of the road sign and fired. He immediately exclaimed, "My, God, I think I hit that car." (N.T. 98). Appellant was in fact correct, for his bullet entered the rear window of a vehicle being driven by John Houck and struck his wife, Naomi, in the head; death was instantaneous.

Evidence at trial established that the Houcks had been traveling along Hobart Road. Standing in the Gilbert garage and facing the valley, Hobart Road is to the right. It descends past the Gilbert home until it reaches the valley. The road then crosses over to and ascends the hill opposite the Gilbert home. As it ascends, Hobart Road disappears behind the knoll; it reappears from behind the knoll part way up the hill, just at the road sign at which Naomi Houck was killed. Viewed from the garage, vehicles traveling Hobart Road are not visible during the time they are behind the knoll.

At trial, Trooper Boyle, the investigating state policeman, testified that during an interrogation, appellant stated that just before he fired the fatal shot "he saw a movement through the scope. He stated that he did not know what it was. He indicated it could have been a weed blowing." (N.T. 52).

Appellant was convicted of involuntary manslaughter in the death of Naomi Houck and sentenced to a prison term of nine (9) to twenty-one (21) months. After denial of post-trial motions, he brought this appeal alleging various assignments of error.[1]

## I

■ Appellant's first assignment is that the court below erred in denying his pre-trial motion to quash the information charging him in separate counts with third degree murder and involuntary manslaughter. Appellant claims that this was improper since involuntary manslaughter is not a lesser included offense in a murder charge, and the offenses therefore could not be joined in the same information. We find this argument to be without merit for two reasons. First, Pa.R.Crim.P. 228 provides that "[w]hen murder is alleged in an information no other counts may be joined in the information *except* voluntary and *involuntary manslaughter.*" (emphasis added). Second, under the Crimes Code, involuntary manslaughter is a lesser included offense in a murder charge. *Commonwealth v. Polimeni,* 474 Pa. 430, 378 A.2d 1189 (1977) (opinion by Pomeroy joined by Eagen, concurring opinion by Roberts joined by O'Brien); *Commonwealth v. Garcia,* 474 Pa. 449, 378 A.2d 1199 (1977) (opinion by Roberts joined by O'Brien and Manderino, concurring opinion by Pomeroy); *Commonwealth v. Ford,* 474 Pa. 480, 378 A.2d 1215 (1977) (opinion by Pomeroy joined by Eagen, concurring opinion by Roberts joined by O'Brien); *Commonwealth v. Roberts,* 484 Pa. 500, 399 A.2d 404 (1979).

## II

■ Appellant's second assignment is that the court below erred in denying his demurrer to the third degree murder

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. III, § 302, 17 P.S. § 211.302 (Supp.1978). Appellant originally appealed to the supreme court, but because that court only has direct appellate jurisdiction over cases of felonious homicide, the appeal was transferred to this court on April 5, 1977. *Id.* at art. II, § 202, 17 P.S. § 211.202 (Supp.1978). *See also* 42 Pa.C.S. §§ 722, 742.

count and failing to direct a verdict on that charge. Appellant contends that this would have been proper since "there was no evidence presented that tended to show [his] guilt of murder." (Brief for Appellant at 5). Although acquitted on that charge, appellant claims prejudice in the lower court's ruling in that it permitted the prosecution to "pyramid" the charges thus encouraging the jury to bring in a compromise verdict on the involuntary manslaughter count. We conclude that the court below did not err.

> Initially, we are guided by the rule that"[a] demurrer is properly granted only if the prosecution's evidence, including those reasonable inferences which may be drawn from it, is insufficient to support a jury's finding that the defendant was guilty beyond a reasonable doubt." *Commonwealth v. Mitchell*, 460 Pa. 665, 671–72, 334 A.2d 285, 288 (1975).

*See Commonwealth v. Duncan*, 473 Pa. 62, 373 A.3d 1051 (1977); *Commonwealth v. Parrish*, 250 Pa.Super. 176, 378 A.2d 884 (1977). A similar test is utilized in ruling upon a motion for a directed verdict. *See Commonwealth v. Boone*, 467 Pa. 168, 354 A.2d 898 (1975); *Commonwealth v. Chapman*, 255 Pa.Super. 265, 386 A.2d 994 (1978).

Instantly, appellant was charged with third degree murder. "Murder of the third degree . . . is an unlawful killing with malice expressed or implied, but absent any specific intent to take a life." *Commonwealth v. Nau*, 473 Pa. 1, 9, 373 A.2d 449, 452 (1977). The classic definition of malice was expressed in *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868), as "not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty . . . ." *See, e. g., Commonwealth v. Polimeni, supra; Commonwealth v. Coleman*, 455 Pa. 508, 318 A.2d 716 (1974).

In light of the above definitions, we must conclude that the actions and statements of appellant were sufficient to support a verdict that he acted with malice in causing the death of Naomi Houck. When appellant exclaimed upon

firing that he thought he had hit a car and subsequently informed Trooper Boyle that he saw a movement just before firing, the possibility was raised that appellant knew that unknown persons were in the vicinity of the road sign. Nevertheless, appellant fired his high-powered rifle across a road on which traffic was moderate and in an area in which an occupied farmhouse was adjacent to the road sign. Viewed in this light, the evidence would have been sufficient to establish that appellant acted with malice in firing the fatal shot. *Cf. Commonwealth v. Coleman*, 455 Pa. 508, 318 A.2d 716 (1974) (discharging gun on bus ignoring possibility that others may be in area); *Commonwealth v. Micuso*, 273 Pa. 474, 117 A. 211 (1922) (dictum) (discharging gun into crowd). The court below did not err in its ruling.

## III

■ Appellant also claims that the evidence was insufficient to support his conviction for involuntary manslaughter.

"It is well settled that in passing upon the sufficiency of the evidence to sustain a criminal conviction, the evidence must be read in the light most favorable to the Commonwealth. *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Pride*, 450 Pa. 557, 559, 301 A.2d 582, 583 (1973). Furthermore, the test of the sufficiency of the evidence is whether, accepting as true all the evidence and all the reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Stanley*, 453 Pa. 467, 469, 309 A.2d 408, 410 (1973); *Commonwealth v. Oates*, 448 Pa. 486, 489, 295 A.2d 337, 338 (1972)." *Commonwealth v. Thomas*, 465 Pa. 442, 445, 350 A.2d 847, 848–49 (1976).

Involuntary manslaughter is the unintentional killing of another resulting from the doing of a lawful or unlawful act in a "reckless or grossly negligent manner . . . ." 18 Pa.C.S. § 2504 (a); *see Commonwealth v. Polimeni, supra.*

Recklessness is defined in 18 Pa.C.S. § 302(b)(3), as a conscious disregard of "a substantial and unjustifiable risk . . . ." The risk must be such that "its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa.C.S. § 302(b)(3).

In light of this standard, the evidence was sufficient to support appellant's conviction for involuntary manslaughter. Appellant conceded in testifying that he observed two or . three vehicles on Hobart Road during the afternoon, and he knew that vehicles traveling along the road were not visible during the time they were behind the knoll. Daniel Gilbert testified that traffic on Hobart Road was "fairly heavy . . maybe 20 cars an hour . . . ." (N.T. 102). Appellant further testified that he glanced along the length of Hobart Road before firing and that he was aware that the area was inhabited and that shooting at the sign "could be dangerous." (N.T. 264). In spite of this knowledge, he took aim and fired at the road sign. Therefore, we have no doubt that viewing the evidence in the light most favorable to the Commonwealth, the jury below could have concluded beyond a reasonable doubt, that appellant's action "involve[d] a gross deviation from the standard of conduct that a reasonable person would [have] observe[d] in the actor's situation."

## IV

Appellant's next assignment relates to various alleged errors in the charge of the lower court.

### a

First, appellant asserts that the court below erred in denying his point for charge that "[t]o find the Defendant guilty of murder in the Third Degree, the jury must find that the defendant harboured malice specifically against another human being or beings." Appellant also asserts that the court "belittled" his claimed defense that he did not observe the Houck vehicle prior to firing his rifle. He further claims that the charge of the court was ambiguous and implied that malice may be found if the defendant is

reckless in a general way, without the requirement that the recklessness create a risk to another human being.

The lower court denied appellant's requested charge, ruling that it had been covered in its general charge, and that it did not "belittle" appellant's claimed defense. We must agree with the court below.

Specifically, the court instructed that murder of the third degree required the element of "malice", and that

"malice consists of an intent to kill or *inflict great bodily harm* or a specific ill will *towards a person*, or of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty, indicating an unjustified disregard for the probability of death or *great bodily harm* and an *extreme indifference to the value of human life.* Malice may be either expressed by the defendant or implied by his words or conduct." N.T. 293 (emphasis added).

Later, in reviewing the essential issues in the case, the court stated:

"Question No. 3: what was the state of mind or degree of culpability involved. If you do find the defendant fired the shot and he was shooting over a roadway at a sign? And, a very important sub-question here is, did the defendant see the car or did he see movement which alerted him or should have alerted him to the fact that there was somebody out there at that precise instant? The Commonwealth, as I understand their position, relies upon the statement which Gilbert attributes to the defendant 'I think I hit that car', or words to that effect. That statement is denied by the defendant. You are to resolve that. There was some inference [*sic*, reference] to, I think, an explanation that this was weeds and not a car. You will have to evaluate that.

The defendant, on the other hand, has presented substantial physical evidence based on certain assumptions which you will have to evaluate, that if the car was where Mr. Houck said it was, that the defendant could not have seen it at the time he squeezed the trigger. Essential to

that, of course, is that the car was where Mr. Houck said it was. You heard his testimony. He was quite firm about that. You must evaluate that and decide whether the defendant saw the car at the time he fired or saw some movement which specifically alerted him to, or should have alerted him to the fact that there was a car out there. It seems to me that's a very important fact on either offense, but most specifically on the offense of murder in the third degree. Someone fires a shot across a roadway and sees there's a car and he sees movement which alerts him to the fact that there's a car there or should have alerted him to that is a persuasive argument on the Commonwealth's side that there is an unjustified risk or extremely high risk of death and reckless disregard of consequences. It's going to be important for the Commonwealth to sustain that. If you think he did not see a car or movement to alert him, I'm not charging you that you can't consider that. I'm not taking from you your duty and right to consider all the circumstances." N.T. 302–04.

In light of the above charges, we are at a loss to understand appellant's claim that the court did not express a requirement that the recklessness element of malice must entail a recklessness involving danger to another human being, and that the court "belittled" his claimed defense.

### b

Appellant next claims that the instruction of the court to the effect that he could be convicted solely upon the testimony of his accomplice,[2] Daniel Gilbert, was inconsistent with another instruction that the jurors must find that appellant possessed the requisite state of mind to satisfy the elements of third degree murder or involuntary manslaughter. For the same reason, appellant claims that an instruction that he could be convicted based upon his own statements likewise removed from the jury their consideration of his mental

2. The court also instructed that the jurors must first determine whether Daniel Gilbert was in fact an accomplice, and that if he was, they should carefully review his testimony.

state at the time of the shooting. We find appellant's arguments to be wholly spurious.

■ "It has long been the law of Pennsylvania that the uncorroborated testimony of an accomplice is sufficient to convict a defendant." *Commonwealth v. Bradley*, 449 Pa. 19, 21, 295 A.2d 842, 844 (1972). Moreover, a defendant's admissions may be relevant in establishing whether he possessed the requisite intent necessary for the offense. *See Commonwealth v. Wilks*, 250 Pa.Super. 182, 378 A.2d 887 (1977).

■ As stated previously, Daniel Gilbert testified that immediately after firing the fatal shot, appellant exclaimed, "My, God, I think I hit that car." (N.T. 98). Trooper Boyle also testified that appellant admitted that just as he fired at the road sign appellant saw a movement through the scope, that he didn't know what it was, but that it may have been a weed blowing. (N.T. 152).

Reviewing the above summary, we cannot say that the court usurped the jury's responsibility to find that appellant possessed the requisite *mens rea* for either third degree murder or involuntary manslaughter. The testimony of Daniel Gilbert and Trooper Boyle raised an issue as to whether appellant was fully cognizant of the presence of the Houck vehicle just before firing. The court did not state that the testimony of Gilbert and Trooper Boyle negated the need to examine appellant's mental state, but that their testimony as to what he said may be relevant in resolving this issue. Appellant's claim is, therefore, without merit.

c

■ Finally, appellant claims that the court erred in permitting impeachment of his character witnesses, and in instructing the jury regarding the credibility of these witnesses.

Specifically, appellant called six character witnesses who testified that he possessed a reputation in the community for peacefulness, honesty, truthfulness, sobriety and that he was law abiding. (N.T. 199, 201, 203, 204, 206, and 207). In two

instances, the prosecuting attorney inquired on cross-examination whether the witness had heard anyone in the community state that appellant had been discharged from a job because of dishonesty. (N.T. 199, 205). Both witnesses replied that they had not heard such a charge. Prior to the questioning, the prosecuting attorney stated at side bar that he had an independent basis for such inquiry and the court below specifically instructed the jury as to the limited use of such questions. Finally, in its charge, the court again informed the jury as to the limited use of the cross-examination.

It is a basic tenet of the law of evidence that when a "defendant introduces evidence of his own good character, as was done in the instant case, the Commonwealth is permitted to cross-examine the character witnesses 'as to whether or not they ever heard *persons in the neighborhood* attribute particular offenses to the defendant.' *Commonwealth v. Jenkins*, 413 Pa. 606, 607–608, 198 A.2d 497, 498 (1964). (Emphasis in original).

Such cross-examination is allowed for the purpose of testing the accuracy of the character witness' testimony to determine whether he is indeed thoroughly familiar with the defendant's reputation in the community. *Commonwealth v. Becker*, 326 Pa. 105, 191 A.2d 351 (1937); *Commonwealth v. Thomas*, 282 Pa. 20, 127 A. 427 (1925). Under this exception to the general rule the prosecution has been permitted to question a character witness as to a prior arrest, whether or not it culminated in an indictment, trial or conviction. *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Commonwealth v. Amos*, 445 Pa. 297, 300, 284 A.2d 748 (1971)." *Commonwealth v. Little*, 449 Pa. 28, 31, 295 A.2d 287, 289 (1972).

The scope of the cross-examination is not limited, however, to prior convictions or even arrests, but may also entail rumors of prior offenses, since the purpose is to test the witness' familiarity with the defendant's reputation. *See* 3A Wigmore, Evidence § 988 (Chadbourn rev. 1970) and cases cited therein. The court, therefore, did not err in

permitting the questions as properly framed nor in instructing the jury as to the use of the cross-examination.

## V

■ Appellant's next assignment of error is that the court below erred in denying his mistrial motion when a police witness implied that appellant chose to exercise his fifth amendment right to remain silent after being informed of his "*Miranda*" rights. Specifically, the policeman testified as follows:

"Q. Did he have occasion to make any statements at that time?

A. Yes.

Q. And, can you tell us what, if anything, he said?

A. Yes. At that time, he said that he and Mr. Gilbert were shooting at targets which were placed approximately 585 feet in front of the Gilbert home.

Q. *At that time, did he say anything else?*

A. *No.*

Q. Did you have occasion to talk to him the second time?

A. Yes.

Q. And, when was that?

A. That was _ _ _

MR. SHOEMAKER [defense counsel]:

If Your Honor please, counsel would like to approach the bench.

.     .     .     .     .

BY MR. FREY [assistant district attorney]:

Q. Now, Trooper Boyle, you may continue. Did you have occasion to interview the defendant a second time?

A. Yes, I did.

Q. Can you remember when that took place?

A. Roughly a half an hour or forty-five minutes later.

Q. And, what, if anything, did the defendant tell you at that time?

A. At that time, he said he had fired two or three shots at the curve sign which was located some distance, approximately 1563 feet from the Gilbert residence and the sign was located on the opposite side of Hobart Road." N.T. 147–48. (emphasis added).

Appellant contends that when the prosecuting attorney asked, "At that time, did he say anything else," and Trooper Boyle responded in the negative, this implied that appellant chose to invoke his right to remain silent. We disagree.

In *Commonwealth v. Greco*, 465 Pa. 400, 403–04, 350 A.2d 826, 828 (1976), the supreme court reviewed the principles applicable to a defendant who asserts his fifth amendment rights.

"The law is clear. It is reversible error to admit evidence of a defendant's silence at the time of his arrest. *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590 (1973); *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972). The prohibition of any reference to an accused's silence reflects the court's desire that an accused not be penalized for exercising his constitutional rights. *Commonwealth v. Stafford, supra; Commonwealth v. Haideman, supra; Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is a recognition that most lay persons would view an assertion of the constitutional privilege as an admission of guilt. *Commonwealth v. Haideman*, 499 Pa. at 371, 296 A.2d at 767, citing *Walker v. United States*, 404 F.2d 900, 903 (5th Cir. 1968)."

The court below found, and we agree, that the above exchange did not violate the principles of *Greco*. The question to the police officer was specifically framed to establish that there was a hiatus of approximately thirty to forty-five minutes between appellant's two statements. Trooper Boyle's answer merely indicated that appellant's first statement was at an end and set the stage for the second statement. It did not imply that further questioning was conducted during the first session nor that appellant refused to answer further questions. The testimony was, therefore, not violative of appellant's rights.

## VI

■ Appellant's final assignment of error is that the instant proceeding subjected him to double jeopardy. Specifically, appellant had been charged with the same offenses in a trial held on August 4, 1976. A mistrial was declared at that time when the jury remained hopelessly deadlocked despite its deliberations for approximately seven hours. Appellant neither requested nor consented to the mistrial, nor did he object to the court's order. He was re-tried in the instant proceeding during which he properly preserved the double jeopardy issue. He claims that the original trial was improperly terminated thus subjecting him to double jeopardy in the second proceeding. We disagree.

As support for his position, appellant places primary reliance upon *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976). In that case, the supreme court, quoting from *United States v. Dinitz*, 424 U.S. 600, 606–07, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), declared:

"Since [Mr.] Justice Story's 1824 opinion . . . in *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165, this Court has held that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared *without the defendant's request or consent* depends on whether 'there is a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated.'" *Commonwealth v. Bartolomucci, supra*, 468 Pa. at 345, 362 A.2d at 238 (emphasis in original).

Moreover,

"mere silence by [a] defendant or his counsel to the proposed discharge of the jury by the trial Judge will not amount to a waiver of this very important constitutional right . . . ." *Id.*, 468 Pa. at 347, 362 A.2d at 239, *quoting Commonwealth v. Baker*, 413 Pa. 105, 115, 196 A.2d 382, 387 (1964).

Because appellant neither requested nor consented to the prior mistrial, we must determine whether the court's *sua sponte* declaration was based upon "manifest necessity."

In determining manifest necessity, appellant again relies upon *Commonwealth v. Bartolomucci, supra.* In that case, the trial court declared a mistrial when the jury sent word through the tipstaff that they were unable to reach a verdict. The court never summoned the jurors, nor inquired of them either directly or indirectly whether they thought further deliberations would be advantageous. On appeal, the supreme court concluded that the trial court acted too hastily and that the mistrial declaration was not manifestly necessary.

In contrast to *Bartolomucci*, the court in appellant's first trial acted pursuant to the mandates of that case. When the jury announced at 6:23 p. m. that it was deadlocked, the court gave the standard *Spencer* charge, *see Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971), and returned the jury for further deliberations. The jurors returned at 7:15 p. m., and the foreman stated that they were still deadlocked and had been deadlocked on one specific issue for a minimum of three hours. In response to an inquiry, the foreman stated that in his assessment, further deliberations would be of no value. The court then inquired of the jurors generally whether they thought further deliberations would be beneficial; no one responded. The court chose three jurors at random and posed the same question; all three affirmed the statements of the foreman. A mistrial was then declared.

In contrast to *Bartolomucci*, the court in appellant's first trial declared the mistrial based upon "manifest necessity." Before declaring the mistrial, the court properly urged the jurors to reach a verdict through its *Spencer* charge and declared the mistrial only after inquiring of all jurors in general and four in particular whether the deadlock was absolute. Although the court did not individually question all jurors, we do not read *Bartolomucci* as requiring such action, *see Commonwealth v. Bartolomucci, supra*, 468 Pa. at 348–49, 362 A.2d at 239. Appellant's mistrial being the result of "manifest necessity," his second trial did not subject him to double jeopardy.

Finding no error in the court below, judgment of sentence is affirmed.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.