405 A.2d 1247

**COMMONWEALTH of Pennsylvania**

v.

**Mary GARNER, Appellant.**

Supreme Court of Pennsylvania.

Argued March 5, 1979.

Decided Oct. 1, 1979.

356

Lester G. Nauhaus, John H. Corbett, Jr., Asst. Public Defenders, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles E. Johns, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

PER CURIAM:

The court being equally divided, the judgment of sentence is affirmed.

NIX, J., filed an opinion in support of affirmance.

LARSEN, J., filed an opinion in support of affirmance, which EAGEN, C. J., joined.

O'BRIEN, J., filed an opinion in support of reversal which ROBERTS and MANDERINO, JJ., joined.

ROBERTS, J., filed an opinion in support of reversal which MANDERINO, J., joined.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

I believe the trial court should be affirmed for two reasons. First, this claim has been waived because it has not been properly preserved for appellate review. Trial counsel objected on the basis that the question was highly prejudicial rather than challenging its form. "It is a fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court." See *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975). Second, I do not accept the premise that an objection based upon the prosecutor's questioning of a character witness would have been meritorious and if pursued would have justified the reversal of the judgment. The character witness was asked if she was "aware that in May of 1974 there had been an altercation between George and Mary Garner in which it is alleged that she shot her husband"? The answer given by the witness in response was "No. . . ." Therefore, this question was harmless. It is a fundamental rule of evidence that the questions of counsel do not supply the facts in the case. To the contrary, it is the witness' answer. Cf. Wigmore on Evidence §§ 771, 780 (3d edition, 1940), *Pittman v. U. S.*, 42 F.2d 793 (8 Cir.

1930). Here, the answer did not confirm the offensive fact suggested in the question.

While the question may have been improper, it did not reach the degree of offensiveness that would have required reversal. If the answer to the question had tended to confirm the happening of the objectional event, I might be persuaded to reach a contrary result. Here, at best, the answer was neutral and in fact did not provide evidence to this jury of prior unlawful conduct on the part of appellant. Moreover, if the prosecutor had repeatedly attempted to utilize this type of questioning to create an impression that appellant possessed a bad reputation, I would distinguish such a situation from the instant complaint and consider it to be a far more serious allegation.

## OPINION IN SUPPORT OF AFFIRMANCE

LARSEN, Justice.

Appellant Mary Garner was convicted by a jury of murder of the third degree. Post-verdict motions were denied and this direct appeal followed.

Appellant contends that trial counsel was ineffective on the grounds that he failed to raise in post-verdict motions the issue of whether the trial court erred in permitting the Commonwealth to cross-examine defense witness Dorothy Froehlich as to whether she was "aware that in May of 1974 there had been an altercation between George [Garner] and Mary Garner [appellant] in which it was alleged that she had shot her husband?" Appellant argues that the aforementioned question was improper on the grounds that the witness was not asked if she had heard from *persons in the neighborhood* of the incident in question.

The record unambiguously indicates that when the prosecutor asked the question, it had already been established that the defense witness' testimony concerning appellant's reputation was based on what she had heard from the individuals with whom appellant (and the witness) worked:

Q [Prosecutor] I assume, then, that you are saying that you heard people in the community where she [appellant] resides talk about her?

A [Defense witness] Well, no, I don't know about people that reside near where she works, I wasn't familiar where she lived, *I just know from where she worked with me as to her character as a fine person.*

Q What I am saying to you is, are you referring to the opinion other people held as to her reputation or are you only giving your own opinion?

A *No, people who worked with her and myself, yes sir.*

Q Were you aware that in May of 1974 there had been an altercation between George and Mary Garner in which it was alleged that she had shot her husband?

A . . . No. I had not heard that. I will be truthful. The only thing I heard is when this incident happened that we are here for today, and I couldn't believe it. [Emphasis added]

Since the contention that the aforementioned question was improper is devoid of merit, trial counsel had no obligation to raise this issue in post-verdict motions and, thus, his failure to raise said issue did not constitute ineffective assistance [1] of counsel.[2]

I would affirm the judgment of sentence.

EAGEN, C. J., joins in this opinion in support of affirmance.

1. Appellant's claim that trial counsel should have objected to the aforementioned question in post-verdict motions on the grounds that the question was "an unfair and prejudicial attempt by the prosecutor to distort the circumstances" of the May, 1974 altercation is without merit.

2. Appellant's other contentions are also without merit: 1) that trial counsel was ineffective in failing to raise in post-verdict motions the issue of whether the trial court erred in refusing to permit appellant to testify as to the victim's criminal record; 2) that trial counsel was ineffective in failing to raise in post-verdict motions the issue of whether the trial court erred in permitting the Commonwealth to

## OPINION IN SUPPORT OF REVERSAL

O'BRIEN, Justice.

Appellant, Mary Garner, was convicted by a jury of murder of the third degree. Post-verdict motions were denied and appellant was sentenced to serve two to seven years at the Pennsylvania Community Service Home for Women at Shadyside in Pittsburgh. This direct appeal followed.

The facts are as follows. On November 3, 1975, the switchboard operator at the Penn Hills Police Station received a call from a woman, identifying herself as Mrs. Garner, who stated she had just shot her husband. When police arrived at the scene of the shooting, appellant answered the door and told police she had shot her husband, George Garner, when he attempted to beat her. Police found the body in a bedroom, but found nothing to indicate that a struggle had occurred. Further, upon finding no signs of trauma or injury to appellant, police arrested Mrs. Garner upon a general charge of murder.

Appellant first claims that the trial court erred in permitting the Commonwealth to cross-examine a defense reputation witness whether she was "aware that in May of 1974 there had been an altercation between George and Mary Garner in which it is alleged that she had shot her husband?" At the time the question was asked, trial counsel objected and moved for a mistrial. Both the objection and the mistrial motion were denied. In filing post-verdict motions, counsel failed to include this issue and appellant now claims she was denied effective assistance of counsel[1] because of

> cross-examine appellant concerning the May, 1974 altercation; 3) that the trial court erred in "refusing to permit . . . [appellant] to cross-examine the Commonwealth's reputation witnesses on whether they had knew [sic] that the . . . [victim] had been convicted [of] or arrested for various" crimes; and 4) that the trial court erred "in refusing to permit . . . [appellant] to testify that she believed that force was necessary to protect her well-being" at the time of the slaying.

1. Appellant is now represented by different counsel than trial counsel.

counsel's failure to include this issue in the written post-verdict motions.

In *Commonwealth v. Jenkins*, 413 Pa. 606, 607–08, 198 A.2d 497, 498 (1964), we stated:

"Character witnesses may legitimately be questioned as to whether or not they ever heard *persons in the neighborhood* attribute particular offenses to the defendant. This is allowable for the purpose of testing the accuracy of the witness's testimony by showing that he or she is not thoroughly familiar with the reputation concerning which he has testified. However, prejudicial questions, which obviously are for the purpose of showing the commission of a specific crime or crimes for which the defendant is not presently accused, are not legitimate or fair on cross-examination." (Emphasis in original.) [2]

The Commonwealth now argues that our decision in *Commonwealth v. Darden*, 441 Pa. 41, 271 A.2d 257 (1970), allows the questioning which occurred in the instant case. I believe, however, that the Commonwealth misperceives the holding in *Darden*. There:

". . . the police lieutenant who first questioned Darden in police headquarters on the night of February 9, 1968, was asked by the district attorney if he noticed anything unusual about Darden's physical appearance or condition at the time. He responded, 'No, nothing unusual.' He was then asked if he had occasion to know Darden previously, and replied, 'I have known Ben through my work for approximately two years prior to this. He has been in my office . . . approximately 6 to 8 different occasions.' Another police officer, who had also been in the presence of Darden when he was taken

---

2. The objectionable questions in *Jenkins* were as follows:
   "Q. You had heard, hadn't you, that away [sic] back on July 9, 1953 he was arrested as a juvenile for burglary, malicious mischief. Going into Landrich School at 23rd and Federal Streets? You had heard that, hadn't you . . .
   "Q. You have heard, haven't you, that in December, 1953, he had been arrested on a couple of charges of larceny and he at that time, you had heard, was taken away from home and had gone to Glen Mills?"

into custody on February 9th, was asked about Darden's appearance and apparent physical condition at the pertinent time. Further inquiry then brought the response that in his work this officer had learned of Darden being on the street after the hour of 12:30 a. m. at least four times prior to the occasion involved, and the officer had talked with him about it." Id., 441 Pa. at 49–50, 271 A.2d at 261.

In response to a claim that this questioning violated our holding in *Jenkins,* we stated:

". . . Nor are we persuaded that the present situation may be equated with that presented in *Commonwealth v. Jenkins,* 413 Pa. 606, 198 A.2d 497 (1964), wherein we condemned questioning which was primarily for the purpose of calling the jury's attention to prior misconduct of the accused. Herein, in view of Darden's testimony, both at the suppression hearing and at trial, as to his drinking intoxicants before the stabbing and before the making of the incriminating statement, Darden's physical and mental condition at the times involved became an important fact. *Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). The challenged testimony was relevant to establish the ability of the officers to evaluate Darden's condition on the night of February 9th and to lend weight to their testimony that at that time there was nothing unusual apparent in his condition." *Commonwealth v. Darden, supra,* 441 Pa. at 50–51, 271 A.2d at 261–262.

As *Darden* does not deal with the cross-examination of character witnesses, I find that it offers no support for the Commonwealth's contentions that the instant question was permissible.

I believe the instant question is violative of our holding in *Jenkins,* as the character witness was not asked if she had heard from persons *in the community* of the incident in question. As we stated in *Commonwealth v. Jenkins, supra,* 413 Pa. at 608, 198 A.2d at 498:

"The Commonwealth argues that because the questions were prefaced with the words, 'You had heard,' that the inquiries were necessarily directed to whether or not the witness had heard in the community that the defendant was charged with the commission of the crimes mentioned. But this does not follow. The witness could truthfully answer the questions affirmatively and 'have heard' the matters referred to from the defendant personally, or from his counsel, or as a spectator or interested party at a hearing held in connection therewith."

I thus believe the form in which the question was asked, i. e. "Were you aware that in May of 1974 there had been an altercation between George and Mary Garner in which it was alleged that she had shot her husband?" was improper and violative of the *Jenkins* mandate.[3]

In *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352–353 (1967), we stated:

". . . our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." (Emphasis in original.) (Footnote omitted.)

I can find no reasonable basis for failing to include this meritorious claim in written post-verdict motions and thus I believe appellant was denied effective assistance of counsel.

The Commonwealth argues, however, that this claim has been waived because trial counsel failed to object to the form of the question. Rather, trial counsel objected on the basis that the question was, *inter alia,* highly prejudicial.

3.  The question further was somewhat misleading, as the incident in question involved an attempt by appellant to fire shots at her husband's automobile, which was unoccupied at the time.

See *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975). I believe, however, that counsel's objection at trial was sufficient to put the trial court on notice regarding the propriety of the question asked. Finding that appellant was denied effective assistance of counsel, I believe she is entitled to a new trial.

I would thus reverse the judgment of sentence and grant appellant a new trial.

ROBERTS and MANDERINO, JJ., join in this Opinion in Support of Reversal.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

Although I agree with Mr. Justice O'Brien that the question posed on cross-examination to the reputation witness was improperly phrased, I believe that the question would have been improper even if properly phrased. The introduction into evidence of a defendant's prior misconduct through cross-examination of reputation witnesses must be strictly supervised by the courts. As noted by Wigmore:

> "[The] rumor of the misconduct, when admitted, goes far, in spite of all theory and of the judge's charge, towards fixing the misconduct as a fact upon the other person, and thus does three improper things—(1) it violates the fundamental rule of fairness . . . that prohibits the use of such facts, (2) it gets at them by hearsay only, and not by trustworthy testimony, and (3) it leaves the other person no means of defending himself by denial or explanation. . . ."

Wigmore on Evidence § 988, pp. 920–21 (Chadbourn rev. 1970); see *Commonwealth v. Selkow*, 206 Pa.Super. 273, 212 A.2d 919 (1965).

This case, unfortunately, highlights Wigmore's concerns about the potential impropriety of cross-examining reputation witnesses as to a defendant's prior misconduct. Here the district attorney asked the witness if he was aware of

the defendant's prior shooting of her husband, when in fact such an incident never occurred. This question was not only misleading, but unduly inflammatory. Cf. *Commonwealth v. Potter*, 445 Pa. 284, 287, 285 A.2d 492, 493 (1971).

Because the question's prejudicial impact on the jury far outweighed any possible probative value, and could serve only to promote an improper result, I would grant appellant a new trial.

MANDERINO, J., joins in this opinion in support of reversal.